## Case No. 1,689.

### BOTTOMLEY v. UNITED STATES.

[1 Story, 153.] [1]

Circuit Court, D. Massachusetts. May Term, 1840.

MARSHAL—FEES—ADMIRALTY PRACTICE.

1. The marshal's fees for the custody of goods in cases of seizure, and other proceedings in rem, are not honorary, but are dependent upon the precise regulations of law, or in the absence of such regulations, are to be allowed upon the principles of a quantum meruit, graduated by the ordinary value of similar services, and dependent upon the circumstances of each particular case.

[Cited in Jerman v. Stewart, 12 Fed. 275; The John E. Mulford, 18 Fed. 456.]

2. The practice in the admiralty is to refer disputed cases of this nature to an auditor, to examine the evidence, hear the parties, and report the case to the court for a final decision.

This case having been disposed of upon the merits [Bottomley v. U. S., Case No. 1,688], a question afterwards arose as to the charge in the bill of costs of the marshal for custody fees for keeping the goods. It was briefly spoken to by Gray, for the claimant, and by the marshal pro se.

STORY, Circuit Justice. The question, as to the fees of the marshal for custody of goods in his possession, in cases of seizure and other proceedings in rem, has lately in several cases, and particularly in the case of the ship Nathaniel Hooper, come before this court for consideration. The court has been asked to lay down some general rule, which should apply to all cases, and thus furnish to the marshal, as well as to the other parties in interest, a clear guide to direct their conduct. I have had occasion to state, that it is utterly impracticable for the court, according to my judgment, to lay down any general rule, which would not work with great inequality and injustice in many cases. We might just as well be required to lay down a general rule applicable to all cases of salvage, where the circumstances are almost infinitely various. I am aware, that in another district (New York) certain general rules on this subject have been laid down by the learned district judge; but even in that district, a power is reserved to modify and vary the fees in special cases; so that the subject is necessarily left somewhat afloat in its practical operations. But I confess myself by no means satisfied with the general provisions of those rules. They seem to me purely artificial; and, as far as I can gather, they must produce great inequalities in their bearing upon the mass of cases.

[1] [Reported by William W. Story, Esq.]

I have also had occasion to state the general doctrine, by which this court is to be governed in all cases of this sort. We have no right to reward the officers of this court for their diligent execution of the duties of their office by what might be deemed a liberal or honorary compensation. Our duty is simply to compensate them pro opera et labore, following the precise regulations of law, where there are any; and in the absence of such regulations, giving such reasonable compensation, as the like labor and services usually receive in the ordinary business of life, and such as they may fairly be deemed to deserve upon the footing of a common quantum meruit in analogous cases. Of course, the marshal is entitled to be repaid the actual disbursements reasonably made by him, for the care and custody of the goods by his under keepers or special agents. Beyond this, he is entitled to receive a compensation for his own superintendence and supervision, as well as for his personal responsibility for the safe custody of the goods, and for the costs and compensation of his under keepers and agents.

What ought that compensation to be, and how shall it be made? It is sometimes said, that it should be a fixed commission upon the value of the property; sometimes, that it should be by a fixed per diem allowance during the time of custody, without any reference to value; and sometimes, that it should be measured by the duration of time and the value. But it seems to me that there are serious objections to adopting any positive rule of either sort. A commission upon the value of the goods seized, or held in custody, might be too small a compensation in cases, where the value was small, and too great, where it was large. A fixed per diem allowance would operate with great inequality in the like cases. It would, in fact, impose the same burden upon goods worth one hundred dollars, which would be imposed upon goods worth one hundred thousand dollars. Besides; the labor and care actually required to be bestowed on the safe custody of different goods, bears no proportion in any case to their value, or the duration of the custody. The care required in the custody of imperishable goods, such as iron, would be very different from that required by perishable articles, or articles liable to deterioration or leakage. A cargo of fruit, of wine, of oil, of pepper, or coffee, or of broadcloths, or other dry goods, would require far more, and far different care, and would, therefore, include far more, and far different responsibility from a cargo of iron, or grindstones, or mahogany. It would be almost absurd to give the same commission upon the value of diamonds and jewelry, and gold and silver coin, the subjects of salvage, which might be placed in the vaults of a bank; and a cargo of half the value, which was liable to daily deterio-

ration or injury, and required daily examination and scrupulous watching.

It appears to me, therefore, that there is an intrinsic, and I had almost said an insurmountable difficulty, in establishing any general rule as to compensation, which would not operate inequitably and unequally, and even, in some cases, with harsh injustice. The compensation, it seems to me, must, therefore, in all cases of dispute, be decided by the court with reference to all the circumstances of the particular case. The nature of the goods, whether perishable or imperishable; whether liable by exposure to deterioration, loss, or injury, or not; whether requiring more or little care, and also the value of the goods, and in many cases, the length of time of the custody of the goods, and the degree of responsibility attaching to the officer, and the degree of vigilance required of him;—these, as well as the hazards, which, in peculiar cases, he may be compelled to incur, are all fit ingredients to be taken into consideration by the court in awarding compensation to the marshal for custody. In general, I should deem it my duty to refer such matters in cases of dispute to some proper person, as auditor, to hear the parties and examine the evidence, and report the case to the court for a final decision. This is the ordinary practice in admiralty. On the present occasion I shall do so, if the parties desire it. It will be rare, that in common cases any question of this sort will arise. The court place confidence in their officers, and presume, that they will charge no more than what is a just and reasonable compensation; and that usually is so well understood in practice, that I am quite sure, that there cannot be any substantial difficulty in an amicable adjustment. It is but justice to the present marshal to state, that the court have no reason to believe, from his general fidelity and honorable discharge of his duties, that he entertains the slightest desire to receive any compensation beyond what he is justly entitled to for his labor and services, and responsibility in the present case. Referred to an auditor.