## THE JOHN E. MULFORD and others.

*(District Court, S. D. New York. November 8, 1883.)*

**1. ADMIRALTY—PARTITION—JUDICIAL SALES—AUCTIONEER'S FEES.**
An auctioneer is not required by law to be employed by the marshal in sales under process or decree in admiralty; and if an auctioneer be employed by him he is but the agent of the marshal, and can make no charge which the marshal could not lawfully make.

**2. SAME—MARSHAL'S FEES.**
The marshal's fees and charges on sales are limited by sections 823 and 829, and as these do not include any charge for an auctioneer, a notice prior to a marshal's sale that $25 auctioneer's fee would be required of the purchaser in addition to his bid, is an unlawful exaction.

**3. SAME—PURCHASER'S RIGHT TO DRAW HIS OWN DEED.**
A party purchasing has an option under section 829 to draw his own deed, and have it executed by the marshal at a charge of one dollar.

**4. SAME—RESALE—DEFICIENCY.**
Where a claimant was purchaser, and objected to paying $25 auctioneer's fees, and claimed to draw his own deed, both of which the auctioneer refused to yield, and the property was again put up and sold at $450 less price, *held*, that the first purchaser could not be held for the deficiency.

5. SAME—ACCOUNT—JURISDICTION.

An action for an account of the receipts of a vessel's earnings, against a former managing part owner, cannot be sustained in admiralty when unattended by any other ground of jurisdiction.

6. SAME—PART OWNER—VESSEL'S EARNINGS—MARSHALLING LIENS.

Such an account may, however, be taken as against a part owner who is a party and claimant in the cause, entitled to share in the proceeds of the vessel sold under a decree of the court, as an incident to the just distribution of the proceeds among the part owners entitled.

In Admiralty.

*Henry N. Tifft,* for libelant.

*Henry D. Hotchkiss,* for A. E. Lewis.

*Edward B. Merrill,* for G. W. Lewis.

BROWN, J.   The law does not authorize the marshal, in the sale of property under process or decree in admiralty, to employ an auctioneer at the expense of the parties, or of the property, or as an incumbrance upon the sale, or as a charge against the purchasers.   The purchaser in this case was the libelant and half owner.   The auctioneer employed by the marshal announced, prior to the bids, that the purchaser should pay the auctioneer's fee of $25, and $5 for the bill of sale.   Section 829 of the Revised Statutes provides a certain percentage for the compensation of the marshal for the sales of vessels or other property under process in admiralty, and also provides that the marshal shall be entitled to one dollar for executing a deed "prepared by the party or his attorney," and to five dollars "for drawing and executing a deed of the property."   Section 823 further declares that no other compensation shall be taxed and allowed except in cases expressly provided by law.   Unless the auctioneer be employed upon a specific agreement of the parties to the controversy, he is a mere agent of the marshal in effecting the sale, and cannot therefore make any claim for compensation, or impose any charge upon the property or purchaser, which the marshal himself could not lawfully make or impose.   No auctioneer is required by law upon sales by the marshal; and the latter can make no charges except such as the law expressly authorizes.   *Bottomley* v. *U. S.* 1 Story, 153; *Crofut* v. *Brandt,* 13 Abb. Pr. (N. S.) 132; S. C. 46 How. Pr. 481.

So, under section 829, the party to the suit has an option to draw the deed of sale, and have it executed by the marshal at a charge of one dollar only.   After the claimant had bid off the property at $4,450, he objected to paying $25 auctioneer's fees in addition, and claimed the right to draw the deed.   The auctioneer, in presence of the deputy marshal, refused to yield to these objections, in consequence of which the sale was not completed, and the property was subsequently again put up and sold at the price of $4,000 only.   The libelant moved to compel the claimant, who was the first purchaser, to account for the difference out of his share of the proceeds now in the registry.

As unlawful exactions were coupled with the bid, the claimant was

legally justified in refusing to accede to these exactions, and the auc-
tioneer refused to complete the purchase or accept the deposit except
upon the payment of these exactions. Had these exactions been
abandoned when objected to, I think this court would have compelled
the claimant to account for the deficiency on the second sale out of
the fund in court belonging to his share, had he refused to abide by
his former bid; but as no such offer was made, the claim for the
deficiency cannot be enforced.

The libel was filed to obtain a sale and partition of the vessel be-
tween equal half owners, under which the vessel has been sold by
consent and the proceeds brought into court. George W. Lewis was
made defendant, as a former managing part owner, to obtain an ac-
count and payment from him of the libelant's share of former earn-
ings of the vessel. But George W. Lewis had conveyed all his inter-
est in the vessel to the other defendant before the libel was filed.
His liability for such earnings rests merely upon a naked accounting
between part owners, of which the admiralty does not take cognizance
when unattended by any other ground of jurisdiction. *The Ocean
Belle*, 6 Ben. 253; *Grant* v. *Poillon*, 20 How. 162; *Ward* v. *Thomp-
son*, 22 How. 330; *The Larch*, 2 Curt. 427; *Duryee* v. *Elkins*, Abb.
Adm. 529; *Wenberg* v. *Mineral Phosphates*, 15 Fed. Rep. 285, 288.
As to George W. Lewis, there is no other ground of jurisdiction in
this case, since he was not a part owner when the libel was filed, and
the libel as to him must therefore be dismissed, with costs.

The other defendant was managing part owner for a few months
before the libel was filed, and an account of his receipts of the ves-
sel's earnings is demanded as an incident to the just distribution of
the proceeds of the vessel sold and now in the registry. This, it seems
to me, may and ought to be allowed, as was done in the case of
*The L. B. Goldsmith*, Newb. Adm. 123, without violating the princi-
ple of the decisions above referred to.

It is urged by the defendant that the libelant has no lien upon
the past earnings in the defendant's hands, even if on an account
taken anything should be found due the libelant in respect thereto;
and that, therefore, they cannot be taken into account in this court
in the distribution of the proceeds of this vessel now in the regis-
try. The question of the lien of the libelant upon the proceeds of
the vessel for any such balance has long been a vexed one. In
the case of *Mumford* v. *Nicoll*, 20 Johns. 611, 636, such a lien was
sustained, overruling the decision of Chancellor KENT, 4 Johns. Ch.
532. Judge STORY, in the case of *Patton* v. *The Randolph*, Gilp.
457, 460, intimated that he should be disposed to follow the opin-
ion of Chancellor KENT, but the point was not determined, as the
libel was dismissed on other grounds. In the case of *The New Orleans*
v. *Phœbus*, 11 Pet. 175, it was said to be improper in a libel for posses-
sion to introduce claims for an account of the vessel's earnings. In
the case of *The Larch*, 2 Curt. 427, it was held on appeal, by CURTIS, J.,

that no such lien exists unless the owners be also partners in the vessel; and that if it did exist, it could not be enforced in admiralty as a single and independent subject of account.

I have not been referred, however, to any case in which it has been held that such an account could not be required and taken from a person who comes into court claiming a share of a fund in the registry as incidental to a just determination of his claims. And since the promulgation of the supreme court rules in admiralty under the act of congress of 1844, this court, by the forty-third rule, is required, when any person claims an interest in any fund in the registry of the court, "to proceed summarily to hear and decide thereon, and to decree therein according to law and justice." Unless the words "and justice," here used, mean something beyond mere technical legal rights covered by the word "law," they would be superfluous; they are intended to embrace, I think, all recognized equitable rights, as well as mere demands at law.

There is no question that the libelant is entitled to one-half of the net earnings of the vessel in this defendant's hands, and if they were in the registry he would have a lien thereon. If, as is claimed by the libelant, this defendant has a considerable sum in his hands as the proceeds of these earnings, it would be a very imperfect administration of justice to decree to the defendant the full half of the proceeds of the vessel in the registry, without any account of the excess of her earnings belonging to the libelant already in this claimant's possession, and to turn the libelant over to a future and possibly ineffectual action in another court to recover these earnings. There is no want of power, as I understand, in this court, as a court of admiralty, to take such an account as an incident to the principal cause, of which it has undoubted jurisdiction, when justice requires such an account in order to make a just distribution of a fund in the registry of the court; and if any express authority were needed, it seems to me the language of the forty-third rule is sufficient. The English courts of admiralty, under 24 Vict. c. 10, § 8, have for many years exercised full jurisdiction over such questions and such accounts. Macl. Shipp. 102.

As stated by WARE, J., in the case of *The Larch*, 3 Ware, 34: "Where there are such accounts incidentally arising in the case, it is a question addressed to the sound discretion of the court whether it will take cognizance of the account or not. If long, intricate, and multifarious, the court will decline to take jurisdiction." In this case the period is short,—some three or four months only,—and the account necessary to be taken does not appear to involve anything intricate, or that cannot be easily adjusted in this court; and, as it seems to me, it should therefore be settled here.

There is another ground, however, upon which, if the foregoing be of doubtful authority, the accounting in this case ought, I think, to be sustained. Various other lienors for wages and supplies have

filed claims under the forty-third rule against the proceeds in the registry, which have been allowed to the extent of about $900. As between the libelant and this defendant, the earnings of the vessel constituted the fund primarily liable for the payment of these liens; and if any of her earnings remain in this defendant's hands unaccounted for, the libelant has a right to have these liens to the amount of $900 paid out of such earnings by the defendant before the proceeds of the vessel in the registry are charged with these liens; and if the defendant will not pay these liens out of these earnings, the primary fund applicable thereto, then the libelant has a clear and undoubted equity to have these liens charged upon the defendant's share of the proceeds of the vessel in the registry, before his own share is burdened with them; at least, to the amount of these earnings in the defendant's hands. This equitable right can thus be enforced and satisfied, and a decree "according to law and justice" would seem to require this to be done. In the language of WARE, J., in the case of *The Larch*, 3 Ware, 33, the vessel "would only be liable for the balance of the liens after appropriating the funds in his possession arising from her earnings; for it was his duty to appropriate these before resorting to the vessel." And so it is the duty of this defendant, before making any claim to the proceeds of this vessel, and suffering these liens to be charged wholly upon the vessel, to appropriate to the payment of them any balance of earnings in his hands. Justice, under the forty-third rule, demands that this should be required of him now, and an account of these earnings must be taken in order to ascertain how much of these liens is to be wholly charged on this defendant's share of the fund in the registry. It is in the common course of the admiralty to recognize the equitable rights of the parties before it; to marshal liens according to their priorities; and to distribute any funds in its possession so as to satisfy the equitable rights of the parties before it, without turning them over to further suits in other tribunals. Ben. Adm. Pr. § 560; *The Eleanora*, 17 Blatchf. 88, 105; *In re Wright*, 16 FED. REP. 482; Macl. Shipp. 706, 707.

The report of the commissioner as to the claims of the various petitioners is sustained, and the exceptions overruled.