## UNITED STATES *v.* FITZSIMMONS *et al.*

### (*Circuit Court, N. D. Georgia.* March 28, 1892.)

1. UNITED STATES MARSHALS—LIABILITY ON BOND—FEES—INTEREST.
   In a suit upon the official bond of a United States marshal for sums due on his fee and emolument account, interest should be allowed from the date when a balance was stated against him by the treasury officials, although the amount found to be due is less than this balance.

2. SAME—ALLOWANCES TO DEPUTIES—ACCOUNTS—WAIVER.
   Rev. St. U. S. § 841, providing that the allowances to any deputy marshal shall in no case exceed three fourths of the fees and emoluments received for the services rendered by him, does not make it unlawful for the marshal to allow three fourths of the gross fees, without first deducting the expenses incurred in earning the fees; and where during his whole term of office a marshal adopted this basis of settlement, both with his deputies and with the treasury department, and no objection was made thereto, he cannot, in an action on his bond, claim that the settlement should have been on the basis of three fourths of the net fees.

3. SAME—FEES—EXPENSES.
   A marshal is not entitled to the actual expenses incurred in earning a fee, in addition to the statutory allowance.

4. SAME.
   There is no law or practice entitling a deputy marshal to all the fees earned in individual cases.

5. SAME—EMPLOYMENT OF AUCTIONEER.
   A marshal has no authority to employ an auctioneer to sell property, and is not entitled to any allowance for the expense thereof.

**6. SAME—EXPENSES.**

A marshal is not entitled to an allowance for expenses incurred in sending a third person to investigate a controversy between himself and one of his deputies.

**7. SAME—LIABILITY TO DEPUTY FOR FEES.**

A marshal and the sureties on his bond are not liable to his deputies for fees due them, which were paid over to him; their claim is against the government; and hence, in a suit by the government on his bond, he is not entitled to a set-off for fees still owing to his deputies.

**8. SAME—ACTION ON BOND—TRIAL—WAIVER.**

Where accounts are investigated at length before an auditor, without any objection to the scope of the investigation, the parties cannot, after the report has been on file for seven months, for the first time object that the pleadings were not broad enough to cover certain matters reported upon.

At Law. Action by the United States against O. P. Fitzsimmons and the sureties on his official bond as United States marshal. Heard on exceptions to the auditor's report. Exceptions overruled.

*S. A. Darnell*, U. S. Atty.

*Broyles & Johnston, Jackson & King, J. S. Hook, W. W. Montgomery, J. M. Smith, J. M. Russell, Henry Jackson, John I. Hall, George Hillyer*, and *Weil & Brandt*, for defendants.

NEWMAN, District Judge. This suit was brought in November, 1885, by the United States, against O. P. Fitzsimmons, late United States marshal, and the sureties on his official bond, for the sum of $14,249.09, which sum, it was alleged, had come into the hands of the said Fitzsimmons as marshal, and which he has failed to pay into the treasury of the United States, as required by law. The declaration was amended on the 8th day of June, 1886, which amendment, in connection with the original declaration, will be noticed hereafter. Demurrers, upon the grounds therein stated, were filed, both to the original and amended declaration, to which I will also allude hereafter. On the 15th day of May, 1886, this case was referred by my predecessor, Judge McCAY, to an auditor, "to hear and determine the evidence submitted by either party, to investigate the accounts between the parties, and to perform the powers and duties authorized by the laws of Georgia, and to report his findings as early as practicable to this court." On June 21, 1887, the auditor filed his report, and to that report various exceptions have been filed. In January, 1888, this report was referred back "for the purpose of allowing the auditor to separate the items of indebtedness found due by the marshal to the government, to wit, what amount due by him for fees of jurors, fees of witnesses, support of prisoners, miscellaneous expenses, and fees and expenses of marshals; also to hear argument as to the rate of interest to be paid by the marshal on the principal sum, and also to hear evidence as to a credit of three hundred and twelve dollars claimed by the marshal to have been allowed him by the department for extra services." In accordance with this order a supplemental report was filed by the auditor on January 27, 1888. To the exceptions filed originally additional exceptions were added subsequently, without objection. I will take these exceptions up in the order in which they appear.

The first exception is that the report does not cover the points involved with sufficient directness and fullness, in this: (*a*) That it fails to show the state of the account between the United States and said marshal touching the fees and emoluments of the marshal's office. This exception is obviated, I think, by the supplemental report of the auditor. This was one of the grounds for referring the report back to the auditor, that he might separate this finding, and show under what branch or head the default on the part of the marshal existed. It appears that the marshal received money during the greater part of his term which was to be disbursed under five separate heads, viz., fees of jurors, fees of witnesses, support of prisoners, miscellaneous expenses, and fees and expenses of marshals. It was desirable, inasmuch as he received the money to be disbursed under these several heads, that the report should show more accurately than the original report did under which of these heads balances of accounts were found against the marshal. The supplemental report shows that the entire amount found against the marshal is under the head of fees and expenses of marshals. So that, as I have stated, this exception is thereby obviated.

The next two subdivisions of this exception are (*b* and *d*) that said report fails to show the state of the account between the United States and the marshal, as to money appropriated for fees of jurors and witnesses for the fiscal year ending July 1, 1881. It is sufficient to say with reference to this that the auditor finds no default on the part of the marshal under either of these heads.

The next division of the exception is:

"(*e*) That said report does not find or determine whether or not the marshal unlawfully withheld and failed to account for the fees and costs from individual cases."

As to this it may be stated that the finding of the auditor is precise and full. Indeed, he seems to me to be more explicit in this than any other branch of his report. He sets out the evidence on this subject in his report in full, goes into a thorough explanation, and appends several tables showing how and what he finds upon that subject.

The next subdivision of this exception is (*f*) that the report does not find what was the gross earnings of the marshal's office for the years 1878, 1879, 1880, and 1881, nor for any one or more of said years, nor does said report show that the marshal has failed to account for said moneys wholly or in part. I think that the report of the auditor, accompanied, as it now is, with the supplemental report, is sufficiently definite. The auditor charges the marshal, as a disbursing officer of the government, with all the money he received in his official capacity from the United States and from individuals. As to the amount received, there is no contention whatever. He then proceeds to credit him with all disbursements lawfully made. The report seems to me full and ample. It is accompanied with tables showing the various calculations and findings of the auditor under the different heads in detail. I do not think this exception can be sustained.

The second exception is that the auditor failed to give the marshal credit for an item of $312.20. In the supplemental report this amount is allowed the marshal by the auditor, so that it need not now be considered.

The third is a general exception that the auditor erred in finding as much as he did against the marshal. This is a general exception, and will be controlled by the findings on special exceptions, which special exceptions embrace every point made against the report.

The fourth exception filed by the original counsel in the case is that the auditor erred in the rate of interest found against the marshal. This point was embraced in the reference back to the auditor; and he has amended his report in this respect, and only finds interest from February 20, 1885, the date when a balance of the fee and emolument account was first stated by the treasury department against the marshal. The objection to the rate of interest is obviated by the supplemental report. It is further contended, however, in the argument, that no interest should be charged until the rendition of the judgment in the case, or at least until the filing of the report of the auditor, if his finding should be sustained. The cases of *U. S.* v. *Curtis*, 100 U. S. 119; *U. S.* v. *Power*, 106 U. S. 536, 1 Sup. Ct. Rep. 481; and *U. S.* v. *Collier*, 3 Blatchf. 327,—are cited in support of this position; the contention being that where suit is brought for breach of an official bond, where intricate accounts are involved, and where more is claimed than an investigation shows to be due, no interest should be charged against the defendant until the amount becomes a liquidated demand by a judgment finding the precise amount due. In other words, that there is no liquidated demand until judgment. I do not think the authority cited shows any rule that would make the finding of the auditor error. He finds that interest should commence to run February 20, 1885, the date when a balance on the fee and emolument account was stated against him for a larger amount than the auditor finds. I think the auditor's finding on this subject is correct.

On the 28th of January, 1888, additional exceptions to the auditor's report were filed by the counsel who have come into the case since the report was filed, which I will now proceed to consider.

The first exception is as follows:

"Because the auditor, in considering the accounts of the marshal, submitted to his investigation by the order of this honorable court, did not audit the same according to law, and failed to reduce the return of the marshal of his gross earnings, according to the rule of law prescribed in such cases, to wit, the rule which requires the reduction of the gross earnings to net earnings by deducting the cost of the gross earnings. See section 841, Rev. St. U. S. 1878. See circular of instructions based on this law, issued from treasury department, first comptroller's office, December 5, 1885, by M. J. Durham, comptroller. This law and these instructions having been disregarded, as furnishing the rule of adjustment by the auditor, the defendant by his report is found to be debtor to the government, whereas, if the rule of law had been observed by him, his report would have shown indebtedness on the part of the government to defendant."

The only ground upon which the government can recover in this case is upon the theory of a breach of marshal's bond; but, if the law applicable to the case has not yet been violated by the marshal, there is no breach. This exception is vital and important, since the auditor, in his amended and supplemental report, declares that the award he has made against the marshal is based solely on his fee and emolument account."

Argument in favor of this exception is based mainly upon the circular issued by the first comptroller's office, treasury department, at Washington, D. C., December 5, 1885. This circular, and any argument based thereupon, might be disposed of with the remark that it was not issued until 1885, and the term of the official whose accounts are under consideration ended June 30, 1881. It seems to be conceded by all parties that this circular was issued for the purpose of establishing a definite rule upon a subject as to which no precise rule had existed before. The matter would therefore, it seems, be controlled by the statutes, without reference to any ruling or instructions from the treasury department; but I will consider briefly the portion of this circular which is cited here in connection with this exception:

"Marshals, in making the semiannual return of their emoluments that is required by section 833, Rev. St., are to charge themselves with all the fees and emoluments of every name and character. They are to charge themselves with the gross amount of the fees earned, as contradistinguished from the amount which remains after the deduction of the expenses that were incurred in the earning of the fees. * * * The marshal, having thus charged himself with the gross fees and emoluments of his office, is entitled to credit for the actual and necessary expenses that he has been put to, either by himself or deputies, in the earning of those fees. The expense of earning a fee is properly an expense to be paid by the marshal, and not by the deputy, since the fee itself, to which the expense is but an incident, is payable to the marshal only, and not to the deputy. According to section 841, Rev. St., a marshal, provided the attorney general consents, may pay a deputy as much as three fourths of the moneys which he receives, or which are payable to him by reason of the service of such deputy. It is proper to make this calculation on the basis of the net earnings of the deputy; that is to say, on the gross fees receivable by reason of the service of the deputy, diminished by the expense actually and necessarily incurred in the earning of them."

As I have stated, it seems that, prior to the issuance of this circular by the first comptroller of the treasury department, no general rule prevailed as to settlements between the marshal and his deputies, even if such rule prevails now, in the various marshals' offices of the United States. The plan adopted by Mr. Fitzsimmons in settlements with his deputies seems to have been to pay the deputy three fourths of the fees, and that he did not deduct from the gross earnings, and repay to the deputies, the actual expenses incurred before making the apportionment of one fourth and three fourths between himself and the deputies, respectively. It seems, also, that the marshal, in stating his accounts to the treasury department, during the whole of his term of office stated them as to settlements between his deputies and himself in this way, and that, during the whole of his term, he made no claim for settlement with him or allowance to him upon any other basis. The language of section 841, Rev. St., on this subject, is:

v.50F.no.5—25

"The allowance to any deputy shall in no case exceed three fourths of the fees and emoluments received or payable for the services rendered by him, and may be reduced below that rate by the attorney general, whenever the returns show such rates to be unreasonable."

So it will be seen that there was nothing in the statute to prevent the marshal from adopting this basis of settlement with his deputies, and nothing to prevent the treasury department from settling his accounts on the same basis. There is nothing in the report of the auditor showing whether or not this question was made and discussed before him. The able and industrious counsel who represented the marshal before the auditor probably made every question which could, under the law and facts, have been properly made. But, if it was made before the auditor, would he have been justified in disregarding the plan and basis of settlement adopted between the marshal and deputies, and recognized by the treasury department? Besides, if no account was taken in the settlement between the marshal and deputies, as they were made from time to time, of the actual expenses which were incurred by the deputy, where would any record be found now of such actual expenses, and where would evidence be obtained, in any satisfactory way, upon which to base a readjustment of the accounts upon the plan suggested as the proper one by the defendants' counsel? I think it might be safely considered that this was a sufficient reason to justify the auditor in declining to go into this matter, even if he had been authorized and disposed so to do. The marshal is charged by the government with the gross earnings of his office. The settlement between the government and himself is necessarily on the basis of his gross earnings, and it is immaterial to the government how the money is apportioned, as between the marshal and the deputy, provided the amount paid out is not in excess of the gross earnings of the office. I state this, not to show that the present construction of this statute, as announced in the circular issued in 1885, is not a proper and just construction of the statute, but to show that the rule adopted by this marshal could not be considered a violation of the statute. It is a question, after all, between the marshal and the deputy. And in addition, if the auditor had adopted the course suggested by defendants' counsel in this adjustment, would he not have been finding that the marshal had done what, as a matter of fact, judging by the marshal's returns, the marshal had not done? Where two methods of keeping accounts and stating them would be legal, and one of the two methods is pursued during the entire term of a government official, and after the expiration of his term of office a controversy arises between the official and the government as to the *status* of his accounts, which results in a suit by the government against the official, can it be claimed that in adjusting the accounts the court should adopt the other method, and readjust the whole accounts by this plan? I do not think so. It may be proper for me to add, although the amount in issue would not affect the legal question, that I am unable to see how more than $798.58 would be involved in this point; this being the amount of overpayments found by the auditor to have been made by the marshal to the deputies. If

there should be deducted from this $420.20 paid to A. P. Woodward,—in the earning of which, as he was clerk in the office, there was probably no expense whatever,—it would leave only $378.38 involved. No exception is made to the general plan of investigation by the auditor, which treats the marshal as a disbursing officer of the government, and therefore the only amount involved in this question would be such amount of actual payments in cash by the marshal as the auditor refused to allow; and this is covered by the sum I have just stated. This was the point mainly relied on and ably argued by the distinguished counsel who have recently come into the case, but I am unable, after giving it the most careful consideration of which I am capable, to coincide with their views. Something was said in the argument upon this branch of the case about the marshal being entitled to the actual expenses incurred in earning a fee in addition to the statutory allowance. This position certainly cannot be maintained. I see nothing in the statute, and nothing has been shown to me, to justify such an allowance.

The second point in the amended exceptions is this:

"Because the law in regard to individual fees, or fees in individual cases, is violated by the auditor's report, by his charging all these fees to the marshal, when the very report of the fee and emolument account upon which his judgment is based shows that all these were earned by the deputies, and paid over to them, and recognized as properly disposed of by the department at Washington city; making a large charge in this way, illegally, against the marshal, of $2,298.92."

This exception appears to me to be founded upon an entire misapprehension of the report. I am unable to see any ground for the exception. It seems to me that the auditor dealt with the marshal, in the matter of individual fees, with great liberality. The only difficulty as to individual fees seems to have been in the southern district. If I understand this exception, the meaning of it is that the deputy should have all the fees earned in individual cases. There is no law or practice, so far as I am able to ascertain, to sustain this position.

The fourth amended exception is the alleged failure of the auditor to report the evidence adduced before him in full. As I understand the statement of counsel, this exception is not insisted upon, because the questions they make can be fully considered without it. In what I have already stated, and what I shall hereafter state, I shall endeavor to give each exception fair consideration, and I presume this exception is not insisted upon; and if it should be, the failure to report the evidence was, I think, by consent of counsel. Certainly, no exception was made on this point either at the time the report was filed, in June, 1887, nor subsequently, until January, 1888, and in the mean time the case had several times been set for argument.

The fifth amended exception is:

"Because the auditor exceeded his jurisdiction in undertaking to disallow charges hereinbefore and hereinafter more especially set forth, which had been allowed at Washington, especially as no issue is raised in the declaration upon the correctness of these charges."

The argument before me on this exception was that the scope of the declaration was not sufficient to justify certain branches of the investigation. The original declaration was filed in the case in November, 1885. To this declaration a demurrer was filed. Afterwards, in June, 1886, an amendment was filed to the declaration, and to this amendment there seems also to have been a demurrer. At least, I find two demurrers among the papers,—one to the original and one to the amended declaration, and also a plea. None of them, however, appear to have been filed in office; but I will treat them as of file, for the purpose of considering this question. It is sufficient for me to say upon this point that I think the declaration, as amended, sufficiently broad to justify the scope given to the matter by the auditor; and in addition to this the entire investigation seems to have been gone into by the auditor with defendants represented during the whole of it, and without any objection during its entire progress, so far as appears, to any branch of the investigation. And, further, this report was filed in office more than seven months before any objection was made whatever to the manner of investigation by the auditor or the report upon the ground that he had gone outside of the pleadings.

The sixth amended exception is:

"Because the auditor erred in charging the marshal with $1,025.67 entered in the fee and emolument return for the six months ending June 30, 1879, as 'not received' from the United States, and, again, in charging him with $2,125.58 entered in the fee and emolument return for the six months ending December 31, 1879, making the sum of $3,151.25, erroneously charged against the marshal, all of which appears in Exhibit N of the report."

I believe, in discussion before me, counsel for defendant were all satisfied with the explanation of the district attorney as to the meaning of these words, "not received," and I do not understand that they insist upon this exception; but, if they do, their exception is clearly founded upon a misconception of Exhibit N, (pages 1, 2,) which is called by the auditor an "abstract of emolument returns." The auditor does not charge the marshal with these items as cash received, as counsel seem to think. He charges him generally in his report, as I have stated before, with the cash received from the government, and the fees earned in individual cases, and credits him with the amounts actually disbursed, where they are legal. The part of Exhibit N referred to is, if I understand it, merely a basis of computation, and not a charge against the marshal.

The seventh amended exception is because the auditor erred in not allowing the charge of the marshal for attendance on the United States courts in Savannah during their terms of 1879–80 and spring term of 1881, amounting to $357.50. This is a claim that the marshal should have been allowed, in addition to the *per diem* and mileage allowances paid him by the government, his actual expenses in attending the courts in the southern district. No law was cited, sustaining this allowance, and I am not aware of any. Besides this, it appears that this item was never presented to the department at Washington, and had never

been claimed by the marshal until he claimed it before the auditor. Counsel for defendant, when they were informed that no claim had ever bee made on the department for this amount, I believe, abandoned this position.

Certain other exceptions are appended to these amended exceptions, which are called "exceptions of fact." The first of these states that—

"The evidence clearly shows that the cost of the earnings was (taking a fair average of the evidence on this point) say $33\frac{1}{3}$ per cent. of the gross earnings. The auditor failed to take this view, disregarding this evidence, and brought the defendant in debt, as reported by him, whereas the evidence should have made a finding against the government of five thousand dollars."

While this is called an "exception of fact," it is wholly an exception of law; and I have already discussed the question involved under the other exceptions, namely, as to whether the auditor should have gone into the question of deducting the actual expenses from the fees before making an apportionment between the marshal and deputy. I hold, therefore, that this exception is controlled by the ruling of the court upon the first of these amended exceptions.

The second of these exceptions of fact is that—

"Assuming, for the sake of argument, that the auditor was right in charging the defendant with individual fees, to-wit, $1,107.19, in the northern district, and $1,191.74 in the southern district, he nevertheless erred in failing to credit him with these three fourths of the amount earned in the northern district, to wit, $830.40."

The exception is based upon a misconception of the auditor's report. This charge to him of $1,107.19 in the northern district is a charge made as of cash that went into his hands, because, as I have stated, the auditor charges him with the cash actually received from the government, and the fees in individual cases; and this amount of $1,107.19 is the net amount after deducting from the fees allowed for services in individual cases the actual expenses incurred in earning them. All this will be seen in Exhibit E of the auditor's report. Of course the credits allowed for disbursing this amount will be found in the amounts allowed various deputies in the northern district. If the auditor had given the marshal credit for three fourths of this amount, and then credited him with the amount paid to the deputies for earning it, the marshal would have received a double credit on this account. The auditor, in individual cases, allowed the marshal a deduction of actual expenses before charging him the amount of individual fees that came into his hands; and this for the reason that he treats the marshal, as I have stated, as a disbursing officer, and therefore charges him, in individual cases, only with cash actually received, while in criminal cases he adopts the plan of disbursing money received from the government, used by the marshal himself.

The third exception of fact is because the auditor erred in refusing to allow the marshal credit for the two items on page 9 of the report,— one for $10, and the other for $13.25; the first being for fees paid an auctioneer for sale of property, and the other for expenses incurred by A.

P. Woodward in attending to business of the marshal's office; the said charges not having been allowed by the department at Washington.     I am not aware of any law authorizing a marshal to employ an auctioneer to sell property.     The other amount was for expenses incurred by the marshal in sending Mr. Woodward to investigate a matter in controversy between himself and one of his deputies.     I do not think that this could have been allowed as a charge against the government.

The fourth exception of fact is:

"Because the auditor erred in charging the marshal with $420.28 as overpaid A. P. Woodward;. the fact being that no overpayment was made to him."

If I understand the matter correctly, there is really no issue of fact as to this item.     The amount earned by A. P. Woodward, the deputy named, and the amount really paid him, I think, are not disputed; and the question as to whether there was an overpayment to him is, I presume, controlled by the general question as to method of settlements by the marshal with the deputies, which I have discussed.     If it is not so controlled, and there is an issue of fact on this point, defendants will be permitted to produce evidence before the jury on it.

The fifth exception, as to a disallowance of $159.51 paid to J. B. Gaston, makes a question of fact, on which the jury should pass.

All of these exceptions have been argued before me and submitted; and, in compliance with what I understand to be the desire of counsel on both sides, I announce these views.     The case may now be set for hearing before a jury, that it may finally be determined.

### ON MOTION FOR NEW TRIAL.

NEWMAN, District Judge.     In an opinion filed March 12, 1888, in the above-stated case in passing on exceptions to the auditor's report, I discussed and disposed of every question then raised by defendants.     The question presented in argument on the motion for new trial, and the one which is mainly relied upon, was before the court on an amended plea, and motion to strike the same, which was argued and disposed of June 5, 1889.     Plea filed by the defendants at that time was as follows:

"By leave of the court, defendants amend their plea, and for further plea say there is still due from plaintiff to defendant Fitzsimmons, for the use of certain of his deputies, for services rendered by them as such deputies during the term said Fitzsimmons held the office of United States marshal for the northern district of Georgia, the sum of eleven thousand nine hundred and eighty-six and 17-100 dollars.     The amount due each of such deputies will further appear by reference to the bill of particulars hereto annexed.     Said sum defendants plead in defense of plaintiff's claim so far as it is necessary to meet it, and show nothing due plaintiff, and residue defendants plead as set-off in favor of defendant Fitzsimmons for use of the said deputies to whom same is due and owing, and pray judgment for the same."

It will be perceived that the question there raised is as to the right of defendants to set off against the amount found by the auditor in favor of the government the amount which, in an *addendum* to his report, the auditor finds is due by the government to various persons who

were deputies under Marshal Fitzsimmons. The finding of the auditor on this subject is in these words:

"In the examination of this case it became necessary to go into the account of the deputies against the United States, and to ascertain the amount of their earnings. disallowances, reallowances, etc., and thus to ascertain the balance due them; and while, in accordance with the view I have taken of the case, the statement of these balances is not necessary to a proper understanding of the issues involved, yet I have thought proper to append a table, set forth in Exhibit L, covering two pages, showing the balance due the deputies there named from the United States."

He then appends a table of the amounts due the various deputies. This was not a matter referred to the auditor; and, as will be seen by the language he uses, he did not so consider it. The verdict in this case, which defendant desires now to have set aside, is in a suit between the United States, as plaintiff, and O. P. Fitzsimmons and the sureties on his official bond, as defendants. The deputy marshals were not parties to the case, and I understand that the finding of the auditor as to amounts due them was simply a voluntary statement of that which might be at some time beneficial to persons at interest. As a knowledge of the amount due by the government to these various deputies came to him in the course of his investigation, in auditing the account between the government and Fitzsimmons, he attached it to his report, not as a finding on matter referred to him, but because he probably thought it might be desirable for future reference. In a suit before my predecessor. Hon. II. K. McCay, in the circuit court for this district, between some of these very deputies and O. P. Fitzsimmons and his sureties, a ruling was made by the court which may be of interest just here. The entire report of that case, which I find in 1 Ga. Law Rep. 116, is given, for the reason that that periodical seems to have been very short-lived, and probably but a few numbers of it are in existence. The case stated therein is as follows:

"*J. B. Gaston, L. G. Pirkle, and A. P. Woodward* vs. *O. P. Fitzsimmons et al.*

"(*U. S. Circuit Court, Northern District of Georgia.* November 14th, 1885.)

"BOND OF U. S. MARSHAL—SUIT ON BY DEPUTY MARSHALS FOR FEES—LIABLE WHEN—DEMURRER.

"A suit cannot be maintained against a U. S. marshal, and the sureties on his bond, for fees of U. S. deputy marshals paid over to him. Such claim is against the U. S.

"Gaston and two other deputy U. S. marshals brought suit against O. P. Fitzsimmons, U. S. marshal, and the sureties on his bond, in the United States circuit court, for the northern district of Georgia, claiming that various sums of money were due them for fees earned as such deputies; that said sum of money had been collected by said Fitzsimmons from the United States, and that he had failed to pay the same over to them. Defendants demurred to the declaration in said cause upon the following grounds: (1) That the court had no jurisdiction. (2) That, if a liability existed, it was an individual and not an official one. (3) That the deputies were co-obligors with the marshal. All of these cases were tried together on said demurrer.

"*J. C. Reed* and *Haight & Osborn,* attorneys for plaintiffs.

"*Broyles & Johnson, Jackson & King, Hopkins & Glen, R. B. Trippe,* and *Albert S. Johnson,* attorneys for defendants.

"Counsel for plaintiff insisted that their cause of action arose under section 784, Rev. St. U. S., and under the following clause thereof: 'In case of the breach of the condition of a marshal's bond, any person thereby injured may institute in his own name, and for his sole use, suit on said bond,' etc.

"McCay, J., held that plaintiffs were not injured by the failure of the marshal to pay the money due over to them; that the United States still owed them; that their claim for fees was against the United States, and not discharged by a payment to the marshal; that the government should pay the deputies, then sue and recover on the marshal's bond any sum that might be due the government by reason of the marshal's failure to pay over fees due said deputies.

"The court passed the following order in each of the three cases: 'That the demurrer be sustained on the ground that the plaintiffs have no right of action against the United States marshal and the sureties on his bond; their claim being against the United States. Wherefore, it is ordered that this case be dismissed,' etc."

It will be seen that the above decision was rendered by Judge McCay on November 14, 1885. The original declaration in the suit by the United States against Fitzsimmons and others, in which this motion for new trial is made, was filed on November 18th, so that it seems likely that the decision in the suit of the deputies against the marshal gave color to this case, and the management of it before the auditor. At all events, it seems never to have been suggested, even before the auditor, that there was any right in Fitzsimmons to set off the amount due the deputies against any amount that might be found against him in favor of the United States. The auditor states in his report that, in making his investigation, he treated Fitzsimmons as a disbursing officer of the government, charging him with all the money which went into his hands, and giving him credit for all disbursements to which he found him to be entitled. Except as to a few items, which were eliminated from the case on trial before the jury, I do not believe that any serious objection has ever been made by the marshal to the statement of account, calculation, and finding of the auditor, if it was proper to treat him as a disbursing officer of the government in making his investigation. Certain legal questions, it is true, were raised, as to whether the auditor pursued the correct course in his method of stating the account between the marshal and his deputies, all of which were disposed of by the court in the opinion heretofore filed in the case. There has been no argument as to that question on this motion, and I presume that it is considered as disposed of by the former decision of the court. I have carefully examined this case, and reflected upon it; and I am unable to see any error in the conclusions that were reached in passing upon the exceptions to the auditor's report, or in deciding the motion to strike the plea of set-off, which is copied above, or in the direction given to the case when it was for trial before the court and a jury. It may be proper, however, to allude to each of the grounds of motion for new trial. The first three are based upon the statutory grounds in Georgia,—that the verdict is contrary to law, contrary to evidence, and against the weight

of the evidence, and without evidence to support it, and that it did not cover the true issue in the case, and which is unnecessary to discuss; and I shall allude to each special ground relied on. The fourth ground of the motion for new trial, with additional grounds, as contained in an amendment filed to the motion, raised two questions, as I understand it: *First*, that the court erred in treating the auditor's report as *prima facie* correct. There would seem to be no question whatever about the correctness of this action of the court. This case was referred to an auditor under the statute of Georgia, (Code, § 4202;) and the law under which it was referred provides that the report of the auditor shall be *prima facie* correct as to its finding of fact, (Code Ga. § 3097.) The *second* question raised in this fourth ground of the motion is as to the proper way to state the account between the marshal and his deputies, which question was disposed of by the court in determining the exceptions to the auditor's report; and to the conclusion there reached the court adheres. The fifth ground is that the court refused to charge the jury on a rule laid down in a circular issued by the first comptroller's office of the treasury department, December 5, 1885. This question was also disposed of in the former opinion filed in this case, and I see no reason to change the conclusion there reached. The sixth ground is:

"Because the evidence submitted before the auditor was not sent up with the report, and, though this exception was duly made and filed, the court overruled it, and proceeded with the case."

As to the question made in this ground of the motion the court's views were first expressed in the decision on the exceptions. The court expressed the opinion then, from the facts and statements of counsel made on that hearing, that there had been a waiver by the parties as to the auditor filing a stenographic report of the evidence as taken by him; but subsequently, upon examination of the record, the court held that, if it was the duty of the auditor to send up the evidence, he had done so in the brief of evidence submitted by him in connection with his report, and passed an order to that effect June 5, 1889. The seventh ground of the motion raised the question as to the right of the marshal to have credit for the amount due by the government to his deputies, which has been discussed and disposed of. The eighth ground makes substantially the same question as contained in the seventh ground.

The conclusion is that the motion for new trial must be overruled, and it is so ordered.