# UNITED STATES OF AMERICA *v.* A LOT OF SILK GOODS AND OTHER MERCHANDISE

## (Mrs. S. Kataoka, Claimant).

### December 24, 1912.

1. *Judicial sales* (forfeiture sales under customs laws)—*Marshal's fees and expenses:* In the marshal's bill of fees and expenses in a judicial sale (under decree of forfeiture of goods for violation of customs laws), the statute (Rev. Stat. sec. 829), providing a fee for service of writs, does not allow a charge for delivering a copy of the notice of sale to the advertising medium designated in the decree, nor for delivering to the auctioneer a certified copy of the decree.

2. *Same—Same—Auctioneer's charges as expense of sale:* In the marshal's bill of fees and expenses in a judicial sale, he is allowed (by Rev. L. Hawaii, sec. 1889, adopted under Rev. Stat. sec. 829, subdiv. 6) certain commissions, from which he must pay any auctioneer engaged; but, with consent of the parties in interest, the marshal may be allowed something extra required to compensate an auctioneer whose just charges amount to more than these statutory commissions.

*In Rem:* On information for forfeiture. Motion to allow marshal's bill of fees and expenses of sale.

*C. C. Bitting,* Assistant U. S. Attorney, for the United States.

*E. R. Hendry,* U. S. Marshal, *pro se.*

CLEMONS, J.: The marshal submits for approval his account of fees and expenses in the matter of the sale conducted by him under the decree of forfeiture herein.

[1] In this account are included the cost of advertising notice of sale and the following other items:

"Service notice of sale [upon] 'Pacific Commercial Advertiser'; 'Hawaii Shinpo Sha'; 'Nippu Jiji' and 'Hawaiian-Japanese Daily Chronicle'—4 services @ $2.00 each ...................... $8.00
"Serving decree [upon auctioneer] .............. 2.00

"Marshal's commission for collecting $1751.50; 5%
        on first $500.00 and 2½% on $1251.50 ....... 56.28
"City Auction Co. paid 5% commission for selling
        goods; 5% on $1751.50 .................... 87.55"

Although there is, as pointed out by the marshal, pre-
cedent for these charges in approved accounts in earlier
forfeiture cases in this court, these precedents are in error
as regards the above quoted items of "service of notice of
sale" and "serving decree;" and they are in error as regards
the expense of auctioneer's services, at least in the absence
of consent of the parties in interest (*The John E. Mulford,*
18 Fed. 455, 456; *Wallis v. Shelly,* 30 Fed. 747; *United
States v. Fitzsimmons,* 50 Fed. 381), or perhaps of an order
of court contemplating not only the marshal's having the
aid of an auctioneer but also the auctioneer's being paid
either in part or in whole, out of the sale proceeds, in addi-
tion to the marshal's having his statutory commissions for
effecting the sale (Rev. Stat. sec. 829, subdiv. 6; Rev. L.
Hawaii, sec. 1889.   In case of the precedents for ap-
proval of similar accounts here, no written opinions were
rendered, and undoubtedly such approval would not have
been had if those accounts had been questioned.

[2]   As to the item of auctioneer's commissions: Under
the law applying to the Territorial courts of Hawaii, adopted
as the law of this Federal court (Rev. Stat. sec. 829, subdiv.
6), the local sheriff receives a commission of five per cent. on
the gross sale proceeds up to five hundred dollars and two
and one-half per cent. on any excess, Rev. L. Hawaii, sec.
1889, pp. 743-744; and, by the well-settled practice under
this statute, where the sale is conducted by an auctioneer,
the sheriff must pay that agent out of these stated com-
missions, and may not be allowed anything in addition
thereto for the expense of the auctioneer's services.   This
practice of the Territorial courts is a sound application of
the local law. *The John E. Mulford,* supra; *Wallis v. Shelly,*

supra; *United States v. Fitzsimmons,* 50 Fed. 381, 389-390;
see *Galbraith v. Drought,* 24 Kans. 590, 591-592. For, the
rule is that these fees and expenses, in order to be allowed,
must be strictly justified by statute. According to the au-
thorities, the sale commissions allowable to the sheriff or
marshal are intended as the sole compensation for effecting
the sale, and if he sells through the agency of an auctioneer,
the officer must himself compensate his agent and may not
be allowed in his accounts for any expenses incurred beyond
the amount of his statutory, official commissions.

An exception has been made, however, where the parties
in interest consent to the hiring of the auctioneer at the ex-
pense of the sale proceeds. *The John E. Mulford,* supra;
*Wallis v. Shelly,* supra. On the strict principle of the au-
thorities with regard to matters of fees and expenses in such
cases, and of court costs generally, it would not be just to
stretch this exception so as to give the marshal his commis-
sions for effecting the sale and also allow him for the entire
compensation of an agent, auctioneer, whom he engages to
do his work for him. Here, the goods having been forfeited
to the United States, the only party in interest now remain-
ing, so far as the sale proceeds are concerned, is the govern-
ment; and that party by its attorneys and by its special re-
presentative, the collector of customs, has expressly, though
informally and not in writing, given its approval and con-
sent in the engagement of an expert auctioneer to conduct
the sale on the customary basis as to compensation. The de-
cree also provides that the sale should be held at this auc-
tioneer's place of business, a provision to some extent cor-
roborating the evidence of this consent, though not estab-
lishing its proof. Wherefore, the item of the marshal's com-
mission of five per cent. and two and one-half per cent., is
allowed, with the understanding that it is to go toward pay-
ment of the autcioneer; and the court approves of the extra
expense incurred, i.e., the difference between the two and
one-half per cent. commission to the marshal on proceeds

above five hundred dollars and the five per cent. charged by the auctioneer.

Let it be understood, that this extra expense is approved only because (while also consented to by the parties) it is reasonable, and not as establishing a precedent for a flat rate of five per cent. to auctioneers on any and all sales, regardless of the nature of the thing sold, or of the amount of the proceeds, or of the labor involved. Here, e.g., the auctioneer expended more time and effort in selling these goods, which were nearly all single-piece goods and each of comparatively small worth, than he would in selling a valuable piece of real property, which could be "knocked down" in a few minutes. In the latter case a downward sliding scale of commissions, or a very low rate, would be the only fair compensation, while in the former case a higher, flat, rate would be reasonable. Also, let it be understood, that this opinion is not intended as a broad-cast discouragement of the employment of auctioneers by the marshal. In these days the use of the expert is as a rule highly economical. Here, e.g., the auctioneer has been able to promote the sale to an effective extent impossible for even the efficient marshal: his list of clients, his knowledge of the buying public, and his own private means of advertising (the use of which in this case is covered by the commissions charged) are to all parties in interest well worth the extra cost. Moreover, it is apparent, that the marshal and his deputies could not themselves very very well do the work here involved, in addition to their other duties. The practical suggestion is, then: if any extra expense is to be allowed for auctioneer's fees, let the parties agree or consent thereto. For the ordinary case, in the absence of such agreement or consent, or of a proper order of court, if the marshal's statutory commissions, for which he must sell or engage an auctioneer to sell, are inadequate, the statute should be amended to keep pace with present conditions.

The matter for which "service of notice of sale" is

charged, is delivery of a copy of the notice of sale to the newspaper advertising mediums named in the decree. Acts of this kind are not contemplated in the marshal's statutory fee bill, which provides only for service in a peculiarly technical sense of the word, e.g., delivery of some mandate of the court, or of some notice emanating from the court, the receipt of which charges the recipient with certain legal consequences. See law dictionaries, tit. "service." Although these newspapers were designated in the decree, yet the decree was obviously not directed to them but only authorized the marshal to use these mediums as means of advertising the sale. This item is, accordingly, disallowed.

The item, "serving decree," does not show the nature of the service, but, as I am informed by the deputy marshal, covers delivery to the auctioneer of a certified copy of the order of sale. Undoubtedly it was proper, indeed, commendable practice, to see that the auctioneer had a true copy of the decree for his guidance; but, as in case of the item just discussed, the delivery by the marshal's deputy of such a paper to the marshal's agent, the auctioneer, is not "service" in the technical sense in which that word is used in the statute. Thte item is therefore disallowed.

The item of expense of advertising in the designated newspapers, is allowed, being expressly provided for by the local statute adopted in this court. Rev. Stat., supra; Rev. L. Hawaii, supra.

The marshal having already deposited with the clerk the net proceeds of sale and the amount of fees for service of papers and the marshal's commissions as charged in his proposed bill of account, it will be necessary that the clerk segregate these moneys in accordance with this opinion. As the auctioneer's compensation has already been deducted from the gross sale proceeds, the suggested error of double charge of marshal's sale commissions, may be cured by simply transferring the amount of his statutory commis-

sions to the net proceeds fund. The other disallowed items may be disposed of in the same manner.

But, it has been suggested, that as the United States treasury eventually gets all this money anyway, the marshal's service fees and sale commissions being deposited by the clerk with the local United States depositary to the credit of the treasury, and the net sale proceeds going to the treasury through he collector, any segregation of the moneys on the basis of the above rulings would practically be vain, and that, therefore, the account might just as well stand as submitted. With this suggestion I disagree. Apart from any possible interest of the "detecting and seizing officer" or informer in these proceeds (Customs Regulations, 1908, arts. 1289 et seq. and citations), which, through an improper charge in the fee bill, would be prejudiced by a reduction of the net sum returned to the collector, that official is entitled to the credit of himself reporting the true net proceeds to the treasury in the regular routine; and on general principles it would be unsystematic and confusing to permit an error, even though technical, to stand uncorrected merely because in spite of it the money would finally find its way to the credit of the Federal treasury.