In re UNITED STATES STEEL PRODUCTS CO.

Circuit Court of Appeals, Second Circuit.
March 5, 1928.

No. 108.

1. **Collision** ⊜⇒115—Colliding vessel is responsible in full to cargo owners of carrying vessel, where both vessels are at fault (Harter Act [46 USCA §§ 190-195]).

Where both vessels privately owned are at fault in a collision, colliding vessel is respon-

24 F.(2d)—42

sible in full to cargo owners of carrying vessel, with due regard for provisions of the Harter Act (46 USCA §§ 190-195; Comp. St. §§ 8029-8035), but colliding vessel may recoup one-half of amount from one-half of amount of damages to the carrying vessel.

2. **Shipping** ⊜⇒209(1)—Intervention by cargo owners of vessel colliding with another, in petition for limitation of liability, is proper remedy.

Where owner of vessel which collided with another files petition for limitation of liability, which is contested by owner of other vessel, intervention by cargo owner of one vessel is proper remedy, where both vessels are privately owned.

3. **Collision** ⊜⇒148—Before sum awarded as value of vessel sinking after collision is paid to owners, just claims against it must be paid.

The sum awarded or to be awarded as value of vessel sinking after a collision is the res, and is a substitute for the vessel; and before such res should be paid over to owner of vessel, just claims against it must be paid.

4. **United States** ⊜⇒126—United States takes position of private suitor by filing claim for vessel sunk in collision.

United States, by filing claim for value of government vessel sinking after collision, takes position of a private suitor, and asks that justice be done regarding subject-matter, which was the collision.

5. **Collision** ⊜⇒148—Recovery by United States of value of vessel sunk in collision is subject to maritime liens of cargo owners.

United States, by filing claim for value of vessel sunk in collision, takes position of private litigant, and as recovery would be a substitute for the vessel, and the res thus created be subject to maritime lien of cargo damaged, recovery of United States should be dealt with, with full regard for maritime liens of cargo owners.

6. **Collision** ⊜⇒116—Cargo owners of privately owned vessel colliding with government vessel, which sank, held entitled to intervene in claim by United States for recovery of value of government vessel.

Where, in collision between privately owned and government vessels, latter sank, and owner of privately owned vessel filed petition for limitation of liability, whereupon the United States filed claim for recovery of value of government vessel, both vessels being at fault, *held*, that cargo owners of privately owned vessel have a lien on recovery of United States and are entitled to intervene.

7. **Shipping** ⊜⇒209(1)—Provisions of Public Vessels Act held inapplicable to petition for intervention not brought under such act (Public Vessels Act 1925 [46 USCA §§ 781—790]).

Where petition by cargo owners for intervention in claim by United States for recovery of value of government vessel sunk in collision was not brought pursuant to the Public Vessels Act of 1925 (46 USCA §§ 781-790; Comp. St. §§ 1251¾-1 to 1251¾-10) such act did not apply, since it does not provide an exclusive remedy.

Appeal from the District Court of the United States for the Southern District of New York.

The United States Steel Products Company, as owner of the steamship Steel Inventor, filed a petition in limitation of liability to the value of the vessel and her pending freight. The United States, as owner of the ·destroyer Woolsey, filed an answer and presented a claim, and thus sought the aid of the court to obtain an award for the loss of the Woolsey, due to sinking while in collision with the Steel Inventor. The California Packing Company and others filed petitions of intervention, as cargo owners, seeking to recover their losses. Exceptions were filed to the petitions and sustained. 16 F. (2d) 306. The California Packing Corporation and others appeal. Reversed.

Haight, Smith, Griffin & Deming, of New York City (John W. Griffin, of New York City, of counsel), for U. S. Steel Products Co.

Bigham, Englar & Jones, of New York City (Leonard J. Matteson, of New York City, of counsel), for California Packing Corporation and others, intervener appellants.

Charles H. Tuttle, U. S. Atty., of New York City (Horace M. Gray, Sp. Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. On February 26, 1921, the steamship Steel Inventor, owned by the United States Steel Products Company, and the United States destroyer Woolsey, collided off the Panama coast in the Pacific Ocean. The Woolsey was sunk and became a total loss. The Inventor was damaged and her cargo sustained serious losses.

The United States Steel Products Company filed a petition for the limitation of liability and the usual stipulation to pay into court the amount of its interest in the vessel and pending freight, and it asked to be exonerated from all fault. The United States filed its answer and filed a claim for $1,500,000 by reason of the loss of the Woolsey. In the answer it contested the claims to both exoneration and limitation of liability and prayed for a decree in its favor as claimant for the amount of its damages. It asked "that a decree may be entered in favor of this claimant and against the petitioner for the amount of damages sustained by this claimant as set forth in its claim filed herein, with interest and costs." After a trial, the District Court entered an interlocutory decree granting such limitation of liability, and further decreed that the United States recover one-half of its damages due to the collision, less one-half of the petitioner's, the United States Steel Products Company.

The appellants, cargo holders on the Steel Inventor, have petitioned to intervene as claimants. They argue that, while no award has as yet been made by the master appointed to fix damages to be awarded to the United States, it is certain that an award will be made in a very large sum. They invoke the principle that since the United States has come into court to enforce a claim, it has taken the position of a private suitor, and must agree that justice be done with regard to the subject-matter, and all just claims must be recognized in the interests of justice, even though, but for their appearance, such claims might not otherwise be enforced. Since both vessels have been held at fault, they argue, the cargo owners have claims against the Woolsey, even though they were incapable of enforcing them against the United States by direct libel. What will be recovered for the United States by the aid of the court is a substitute for the Woolsey. It, by the action of the United States, has been placed within the jurisdiction and control of the court. The argument then proceeds that, by implication, it must agree that just claims against the Woolsey should first be paid out of the sum awarded. In the court below, the intervening petitions were filed, exceptions were interposed and sustained, and the petitions dismissed.

[1, 2] Since both vessels were held at fault, if the Woolsey were a privately owned ship, she would be responsible in full to the cargo owners of the Steel Inventor, with due regard for the provisions of the Harter Act (46 USCA §§ 190–195; Comp. St. §§ 8029–8035). The Atlas, 93 U. S. 302, 23 L. Ed. 863. The colliding vessel may recoup one-half of the amount from one-half of the amount of damages to the carrying vessel. The Chattahoochee, 173 U. S. 540, 19 S. Ct. 491, 43 L. Ed. 801. If both were privately owned, intervention by these cargo owners was a proper remedy. Andrews v. Wall, 3 How. (44 U. S.) 568, 11 L. Ed. 729; The Nahor (D. C.) 9 F. 213. In the Nahor Case, supra, Choate, J., emphasized that a petition to intervene is the only procedure open to cargo owners.

[3] The sum awarded or to be awarded as

the value of the Woolsey is the res and is a substitute for the vessel. O'Brien v. Miller, 168 U. S. 287, 18 S. Ct. 140, 42 L. Ed. 469; Sheppard v. Taylor, 5 Pet. 675, 8 L. Ed. 269. Before such a res should be paid out to the United States, just claims against it must be paid. United States v. The Thekla, 266 U. S. 328, 45 S. Ct. 112, 69 L. Ed. 313; The Siren, 7 Wall. 152, 19 L. Ed. 129. Such claims would include those related to the subject-matter of the litigation. In the Thekla Case, supra, the original bill was filed by the Luckenbach Steamship Company against the bark Thekla, and a cross-libel was filed by the owners of the Thekla. The United States was made a party on its own motion and rested on the steamship company's libel. At the trial, it was found that the ship was under requisition charter to the United States at the time of the collision and that the steamship alone was at fault. A decree was entered for the claimant, and, on certification of questions to the Supreme Court, the court said: "When the United States comes into court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject-matter. The absence of legal liability, in a case where but for its sovereignty it would be liable, does not destroy the justice of the claim against it."

[4, 5] The claim asserted by the United States here was a right of suit in admiralty against the Steel Inventor. In doing so, it did take the position of a private suitor, and asked that justice be done regarding the subject-matter, which was the collision. The Western Maid, 257 U. S. 419, 42 S. Ct. 159, 66 L. Ed. 299; The Thekla, supra. If, with a private litigant, the recovery would be a substitute for the vessel (O'Brien v. Miller, supra), and the res thus created is subject to the maritime lien of the cargo damaged (Sheppard v. Taylor, supra), the recovery of the United States should be dealt with with full regard for the maritime liens of the appellants. In The Thekla, supra, the court said:

"The doubt in this case arises not from the absence of a maritime lien, but from the fact that the counterclaim is not against the Thekla libeled by the United States, but for affirmative relief against a different vessel. * * * But we are of opinion that this is to construe the submission of the United States too narrowly. * * * If both parties were in fault the entire damage would be divided equally between them, and it could not be argued that the United States could

avoid the consequences of the rule although the damage to the other vessel might bar its recovering anything. This shows that the subject-matter is the collision, rather than the vessel first libeled. Bowker v. United States, 186 U. S. 135, 139 [22 S. Ct. 802, 46 L. Ed. 1090]. The libel in such a case is like a bill for an account, which imports an offer to pay the balance if it should turn out against the party bringing the bill. * * * The reasons that have prevailed against creating a government liability in tort do not apply to a case like this, and on the other hand the reasons are strong for not obstructing the application of natural justice against the government by technical formulas when justice can be done without endangering any public interest."

[6] Since the subject-matter of the suit is the collision and the damages which the interveners allege were caused by the collision, it follows that their intervention should prevail. The proceeds or the res thus created is in control of the court and is a part of the subject-matter (that is, the collision), and the United States must be deemed to have waived this immunity under the reasoning of the Thekla decision.

The United States argues that the right of intervention in this litigation depends upon the existence of an interest in a fund in court which the interveners wish to protect, and, since the interveners must admit they have no legal claims against the Steel Inventor, the source of the fund, they may not prevail. But this argument overlooks the fact that it is not the value of the Steel Inventor, but the damage done to that part of its whole—the cargo—which is limited by limitation to the value of the Steel Inventor. The source of the fund is immaterial. Under the rule of The Chattahoochee, supra, interveners have a maritime lien if it were a private suitor, and under The Thekla the same right, even though the United States is the responsible party. The District Court had jurisdiction to entertain the petition of the appellants against collision recovery by the United States as a supplementary suit by a party in interest with reference to proceeds rightfully in possession and control of the admiralty court. Andrews v. Wall, 3 How. (44 U. S.) 567, 11 L. Ed. 729.

The Andrews Case was a suit for salvage, brought by the owners of the vessel Globe against another ship, the Mississippi, and cargo, and a recovery was decreed to the libelants for a salvage award. An intervening petitioner filed a claim, asserting that an agreement of consortship existed between

the owners of their ship and the owners of the Globe, and that by reason of that agreement they were entitled to receive a portion of the salvage award. The intervention was granted, and award made for a sum out of the salvage recovery, and the court said that the proceeds were rightfully in possession and control of the admiralty, and that, as an inherent incident of its jurisdiction, it could entertain supplemental suits by the parties in interest, in order to ascertain to whom these proceeds rightfully belonged, to be delivered over to the parties who established lawful ownership thereof. Interveners there had no claim against the original respondents in the suit, but only against the recovery of the libelant.

The same is true in the suit at bar. The interveners there had a lien on the recovery arising out of contract, while here there is a just claim arising out of a collision. The award is to be made out of the proceeds rightfully in the possession and custody of the admiralty court. The right of the cargo owners to file an intervening petition, asserting claims for damages sustained by them as a result of a collision, and praying that their claims might be paid out of moneys in the court, was held good as against the government in The Siren, supra, where the court said that, although direct suits could not be maintained against the United States, yet, when they instituted a suit, they waived the exemption so far as to allow the presentation by defendants of set-offs, legal and equitable, to the extent of the demand made or property claimed, and when they proceed in rem they take into consideration all claims and equities in regard to the property libeled. "They then stand in such proceedings, with reference to the rights of defendants and claimants, precisely as private suitors, except that they are exempt from costs and other affirmative relief against them, beyond the demand or property in controversy."

It makes no difference that in the case at bar the res against which the appellants seek a recovery was obtained .by the government as a loss of a vessel due to collision, whereas in The Siren the res was the proceeds of a sale of the offending vessel itself. At bar there is an interlocutory decree entered, and a right of action, which the government claimed is· crystallized, and the fact that it will recover a fund is· made certain. Whatever that amount is, it will be large, which will more than cover the appellants' claims, and, while the exact figures will be unknown until the final decree is entered, that fact of itself .is unimportant in fixing the rights of the appellants. It is sufficient that there is a res before the court, which is a substitute for the Woolsey.

[7] It is contended that the appellants should have proceeded under the Public Vessels Act of 1925 (46 USCA §§ 781 to 790; Comp. St. §§ 1251¾—1 to 1251¾—10), and by the provisions of that act the appellants .are barred for failure to proceed within the one-year limitation therein named. This petition to intervene was commenced in August, 1926. Section 2 of the Public Vessels Act ([46 USCA §' 782] Comp. St. § 1251¾—2) provides that "such suits shall be subject to and proceed in accordance with the provisions of an act entitled 'An act authorizing suits against the United States in admiralty, suits for salvage services, and providing for the release of merchant vessels belonging to the United States from arrest and attachment in foreign jurisdictions, and for other purposes,' approved March 9, 1920, or any amendment thereof, in so far as the same are not inconsistent herewith, except that no interest shall be allowed on any claim up to the time of the rendition of judgment unless upon a contract expressly stipulating for tho payment of interest."

Section 5 of the Act approved March 9, 1920 (46 USCA § 745; .Comp. St. § 1251¼d) provides that suits as "herein authorized may be brought only on causes of action arising .since April 6, 1917, provided that suits based on causes of action arising prior to the .taking effect of this act shall be brought within one year after this act goes into effect; and all other suits hereunder shall be brought within two. years after the cause of action arises." The argument is that this provision is incorporated by reference into the act of 1925 and provides a one-year limitation for causes of action arising before its passage. It has been held that a suit commenced after its passage was not barred, and that section 5 of the act of 1920 ˙did not apply. The Wm. T. Rossell (D. C.) 19 F.(2d) 525. But this statute applies only where an action is brought under the act of 1925. The petition in' the instant case was not brought pursuant to the act of 1925, and the statutory period provided for therein is not applicable. Nor does the act of 1925 provide an exclusive remedy. It provides that a libel in personam in admiralty may be brought against the United States, or a petition impleading the United States for damages caused by a public vessel of the United States, and for compensation for towage and salvage service, including the contract salvage rendered **to a** public

vessel of the United States. 43 Stat. 1112 (46 USCA §§ 781–790; Comp. St. §§ 1251¾—1 to 1251¾—10). A cross-libel is provided for by section 3. But such a cross-libel is permitted where the United States waives its immunity and files its cross-libel. The Thekla, supra. The section does not require the procedure, but permits it merely by filing a cross-libel.

The case of United States v. Pfitsch, 256 U. S. 547, 41 S. Ct. 569, 65 L. Ed. 1084, called to our attention, dealt with section 10 of the Lever Act (40 Stat. 279 [Comp. St. § 3115⅛ii]), which gave to the District Court exclusive jurisdiction of claims arising under that act. And the case of Nassau Smelting & Refining Works v. United States, 266 U. S. 101, 45 S. Ct. 25, 69 L. Ed. 190, held that claims arising under Dent Act (40 Stat. 1273 [Comp. St. § 3115¹⁴¹⁵b]), section 2, are within the exclusive jurisdiction of the Court of Claims, and cannot be set up as counterclaims in a suit started by the United States in the District Court. Neither case has any application, nor have the statutes there considered any analogy to the act of 1925. There the question presented was whether the remedy provided by the statute was exclusive to the jurisdiction of each court, while here the question is whether the remedy provided by the act of 1925 is the only remedy available.

The exception to the appellants' petition for intervention should have been overruled and the petition sustained.

Order reversed.