## THE ANDREE.

## THE H. F. ALEXANDER.

### ARMOUR & COMPANY et al. v. GREEN STAR STEAMSHIP COMPANY, Limited.

District Court, S. D. New York.
May 28, 1930.

Bigham, Englar, Jones & Houston, of New York City (D. Roger Englar and L. J. Matteson, both of New York City, of counsel), for petitioners.

Barry, Wainwright, Thacher & Symmers, of New York City (J. C. Crawley, of New York City, of counsel), for respondents..

WOOLSEY, District Judge.

The petition in this case is dismissed with costs.

I. The facts in this proceeding have been stipulated. So far as is necessary to con-

sider them in connection with this opinion, they are as follows:

On April 20, 1922, while the steamship Andree was lying at New York loading cargo, and otherwise preparing for her intended voyage via Philadelphia to Marseilles, North Africa and Spanish ports, a fire broke out in the cargo on board her, which, for the safety of the adventure, was extinguished under the direction of the vessel's officer in charge. Certain sacrifices were made of vessel and cargo, and certain disbursements of a general average nature were made by the master.

A part of the cargo affected, some of it owned by the intervening petitioners, remained on the Andree, or was reloaded after having been temporarily discharged, and was on board the vessel when she sailed from New York for Philadelphia to complete her loading for her intended voyage.

On the way to Philadelphia the Andree was in collision with the steamship H. F. Alexander. The collision occurred in the Delaware river, some distance below Philadelphia, on May 22, 1922. As a result of the collision the Andree was sunk with her cargo, and both were substantially damaged.

Thereafter the Andree and her cargo were raised and taken to Philadelphia, where the voyage was abandoned, the interests were separated, and the adventure was terminated.

Sacrifices of both vessel and cargo were made, and extraordinary expenditures incurred by the master for the purpose of raising the Andree and her cargo and taking them to a place of safety. Certain of such sacrifices and expenditures were of a general average nature, and the amount of such general average expenditures was much in excess of the value of all the property salved.

The bills of lading under which all the cargo was shipped contained the provision: "That general average is to be adjusted according to York-Antwerp Rules 1890."

By rule XVII of the York-Antwerp Rules 1890, it is provided as follows:

"The contribution to a general average shall be made upon the actual values of the property at the termination of the adventure, to which shall be added the amount made good as general average for property sacrificed; deduction being made from the shipowner's freight and passage-money at risk, of such port charges and crew's wages as would not have been incurred had the ship and cargo been totally lost at the date of the general average act or sacrifice, and have

not been allowed as general average; deduction being also made from the value of the property of all charges incurred in respect thereof subsequently to the general average act, except such charges as are allowed in general average."

Henry C. James, as master of the steamship Andree and as bailee of her cargo, libeled the steamship H. F. Alexander to recover damages consequent on the sinking of the Andree as a result of the collision above mentioned with the H. F. Alexander.

The usual stipulation for value was filed by the claimant of the H. F. Alexander, and issue was joined on her claimant's answer. There was also a cross-libel by the owner of the H. F. Alexander which is not material here.

After the filing of this libel, the present petitioners Armour & Company et al., by leave of court, filed a petition asserting their right, based on their lien for the general average sacrifices at New York above mentioned, to share in the proceeds of any recovery which the owner of the Andree might obtain from the H. F. Alexander.

Thereafter this collision case was settled, and an interlocutory decree was entered, on consent, providing for the recovery of 90 per cent. of the provable damages sustained by the owner and charterer of the Andree, and the owners and underwriters of her cargo, together with interest from May 1, 1925.

The amounts to be paid by the H. F. Alexander, in accordance with the interlocutory decree, were agreed upon as follows, interest included:

To owners of the Andree........$199,017.03
To charterer ..................  2,994.73
To officers and crew..........  2,276.80
To cargo represented by Barry,
  Wainwright, Thacher & Symmers ...................... 11,176.03
To cargo represented by Bigham,
  Englar & Jones............. 455,235.21
To certain cargo underwriters..  3,301.61

A final decree was then entered, providing for a recovery by the several libelant interests from the H. F. Alexander of the abovementioned sums.

In order to permit the collection and distribution of the agreed damages without prejudice to the claims of these intervening petitioners, a stipulation for value in the sum of $30,000, bearing interest, was filed by the owner of the Andree agreeing to answer any decree that the intervenors might obtain in this proceeding, and it was agreed that this

stipulation for value was to have the same effect as if the sum of $30,000, out of the sum awarded to the owner of the Andree by the decree in the collision case, had been paid into the registry of the court by the owner of the H. F. Alexander, to abide the order of the court on this petition.

Payments were made in behalf of the H. F. Alexander in accordance with the final decree in the collision case, and an order was entered on September 4, 1926, severing the issues raised in this proceeding from the other issues in the case, and discontinuing the suit as to the claimant of the H. F. Alexander, without prejudice to the rights of these intervenors.

Accordingly, on or before September 4, 1926, by the satisfaction of the collision decree, the intervenors, and all other owners of cargo on the Andree at the time of the collision, received from the owners of the H. F. Alexander an amount equal to 90 per cent. of the physical damages, and general average and special charges that they had sustained by reason of injury to, or loss of, their cargo, as a result of the collision with the H. F. Alexander, with interest from May 1, 1925; and the libelant, owner of the Andree, received the same percentage of the damages it had sustained on account of injury to the Andree, with interest from May 1, 1925.

Before the settlement of the collision case had been arranged, a statement of general average was prepared by Messrs. Wilcox, Peck & Hughes, Inc., experienced adjusters of general average, in accordance with the York Antwerp Rules 1890, and, on matters not covered by those rules, in accordance with the law and practice of Philadelphia, where the voyage was terminated. This statement was issued on December 30, 1924.

It is also stipulated between the parties:

1. That if the first general average, arising out of the fire, alone were readjusted by adding to the contributory values shown in the adjusters' statement, the amount of the net recoveries obtained from the H. F. Alexander, there would be credits in favor of one or more of the intervening petitioners.

2. That if both the first and the second general averages should be readjusted so as to take such recoveries into account, and to include allowances for property sacrificed and expenditures made, the credits referred to in (1) may be much diminished, and the owner of the Andree may be a creditor upon such readjustment by reason of additional contributions that would be due from the owners of cargo other than that mentioned in the intervening petition.

3. That if the property sacrificed in the first general average had not been sacrificed, such property would have been injured as a result of the collision to the same extent that similar property was actually injured thereby, and that the owners of such sacrificed property would have recovered from the H. F. Alexander the same proportion of the damages so sustained by them as was recovered by the respective owners of the Andree, and the cargo on board at the time of the collision, and

4. That prior to the filing of this intervening petition, a majority of these intervenors, including some of those whose cargo was discharged at New York, paid a part of the general average charges assessed against their respective interests, indicated in the general average statement but in no instance did such payment amount to more than 100 per cent. of the contributory values of the respective properties of such intervenors.

II. The petitioners base their claim on the general average relationship which arose between them and the steamship Andree out of the fire that occurred on April 20, 1922, whilst the Andree was loading cargo at New York, and in which cargo owned by the petitioners then on board was sacrificed by injury from water pumped into the Andree to extinguish the fire.

The petitioners' contention is:

1. That by this general average act they became entitled to a maritime lien on the Andree for the amount which they would have received as a contribution to their sacrifice if the voyage had been successfully completed, and they fix this sum at $27,000 on the basis of full recovery for the collision damages to both ship and cargo.

2. That the maritime lien in general average, which was thus impressed on the Andree, was destroyed by the collision with the H. F. Alexander, and

3. That as a consequence they are entitled to share in the recovery secured by the owner of the Andree against the H. F. Alexander to the extent of the amount of this lien.

An answer was duly filed to the petition by the owner of the Andree, and the only questions now before me arise on those pleadings and the agreed facts.

III. A nice question, which is admittedly novel, is raised here.

In approaching it it must be borne in mind—

1. That the port of Philadelphia was a port of loading on the agreed voyage of the Andree from New York to Mediterranean ports, and, consequently, that any question of deviation is entirely eliminated.

2. That it was while the Andree was proceeding up the Delaware river on her way to Philadelphia, with such cargo as had been on her when she sailed from New York, and before she had reached Philadelphia, that the collision occurred in which she was sunk with her cargo.

3. That the adventure was not terminated at the time when the Andree was sunk in the Delaware, but was terminated after she had been salved and towed to Philadelphia, at which place the interests were separated, and as of which place an adjustment of general average was drawn up, as above noted, in accordance with the York-Antwerp Rules 1890 and the customs of that port.

4. That, because the expenses of raising the Andree exceeded her value when raised, she had not any contributory value so far as the fire general average was concerned when she arrived at Philadelphia, where the voyage was terminated.

■ At first impression it may seem unjust to the petitioners that after the Andree was sunk the adventure was not declared terminated, but that, instead, great expenses were incurred in raising her. The answer to this is, first, that whether she could be raised to advantage or not was problematical, and, second, that a claim for a later aid to a maritime adventure outranks a claim for any earlier aid. Cf. The J. E. Rumbell, 148 U. S. 1, 9, 13 S. Ct. 498, 37 L. Ed. 345; The Spaulding, 1 Brown's Adm. 310, 22 Fed. Cas. pages 888, 889, No. 13215.

IV. The only legal relation with which we are concerned here between the petitioners and the Andree is the general average relation which arose out of the fire at New York. For the present purposes, that relation must be considered to have been defined by the York Antwerp Rules 1890, which were incorporated by reference in the bills of lading.

■■ The petitioners had a maritime lien for general average arising out of the sacrifices at New York. Dupont v. Vance, 19 How. 162, 168, 15 L. Ed. 584. Under our law a maritime lien which attaches to a ship will be preferentially recognized in the distribution of the funds resulting from recovery for the loss of the ship by collision or otherwise. O'Brien

v. Miller, 168 U. S. 287, 18 S. Ct. 140, 42 L. Ed. 469; Sheppard v. Taylor, 5 Pet. 675, 709, 710, 8 L. Ed. 269; In re United States Steel Products Co. (The Steel Inventor) 24 F.(2d) 657, 658, 659 (C. C. A.).

It must be remembered, however, that a maritime lien is merely a security for a maritime claim, and its real value to its possessor depends on the value of the res or its substitute when the lien comes to be foreclosed.

■ A recent case in the Supreme Court has shown that a maritime lien, which would otherwise be implied by law, may never arise because it is precluded by a contract between the parties or is waived by the necessary consequences of their actions. Marshall & Co. v. Steamship, President Arthur, 279 U. S. 564, 572, 49 S. Ct. 420, 73 L. Ed. 846.

■ So, too, the event on which, or the time at which, the res is to be valued for the purposes of foreclosing the lien may be fixed by a contract. If it is so fixed the scope of the maritime lien on the res, and, consequently, the value of the lien may be to that extent limited. For the lien cannot properly be foreclosed before the time which is fixed by the contract, nor can the res be valued as of any time before the agreed event has occurred. If the res had not any value when that event does occur, it follows that the lien also is valueless.

Here, by the contract between the parties, the event on which the value of the Andree was to be fixed for general average purposes, under rule XVII above quoted, was the termination of the adventure, either at the port of destination, or at some other place where the adventure might have to be abandoned. Until then, the general average lien of the petitioners, which arose after the fire at New York, was, therefore, only inchoate and was wholly indeterminate in its amount.

Here the collision between the Andree and the H. F. Alexander, in which the Andree and her cargo were sunk, occurred in the Delaware River whilst the Andree was en route to Philadelphia in the regular course of her agreed voyage, but the adventure was not terminated at the place of collision.

The Andree, with her cargo, was raised at an expense exceeding her value when raised, and was towed to Philadelphia, where the voyage was abandoned, the interests were separated, and the adventure was terminated. At that place the Andree was, therefore, valueless, from the point of view of the fire general average, as the adjusters correctly found.

■ Consequently the petitioners are not entitled, in disregard to their affreightment contract, to better their position at the expense of the owner of the Andree, by having their lien imposed on a recovery by the owner of the Andree for collision damage antecedent to the vessel's arrival at the place where, by that contract, the value of the lien was to be fixed.

V. The petitioners argue that it was their sacrifice at New York which enabled the adventure to be continued, and the Andree to reach the place of collision, and that, for this partial success of the adventure, they are entitled to have a general average contribution based in effect on the values recovered in the collision case.

I am asked to treat the collision as the termination of the adventure, and to deal with the collision recovery as the equivalent of the proceeds of the sale of the vessel and cargo at such termination.

So to hold would not be in accordance either with the facts in this case, for here the adventure terminated in Philadelphia, or with the terms of the contract between the parties which, under rule XVII, provided that contributory values should be fixed at the place where the adventure terminated.

Of the cases cited by the petitioners, I think the case of O'Brien v. Miller, 168 U. S. 287, 18 S. Ct. 140, 42 L. Ed. 469, comes nearest to this case in its implications. The difference between that case and this case, however, is that the amount of the maritime lien in O'Brien v. Miller was fixed at a definite sum by the bottomry bond, while here, under rule XVII, the amount of the petitioners' maritime lien was not to be fixed until the Andree arrived at the place where the adventure was terminated, and, therefore, the value of the petitioners' maritime lien could not be determined until the contributory value of the Andree, from a general average standpoint at the place of such termination, was settled.

Although the petitioners constituted the creditor interest in the fire general average when the vessel started from New York, it could not possibly be determined before the termination of the adventure whether it would then still be the creditor interest, for until then it could not be determined whether or not the subsequent events of the voyage might make the petitioners debtors to a general average. This uncertainty seems to be recognized in the agreed statement of facts as above set forth.

VI. So far as I have been able to discover, rule XVII of the York-Antwerp Rules 1890 seems to have been only once directly passed on by the court. That was in the case of Chellew v. Royal Commission on the Sugar Supply, [1922] 1 K. B. 12, in which the British Court of Appeal, affirmed the decision of Mr. Justice Sankey, reported [1921] 2 K. B. 627, and in which he adopted and approved the report, as arbitrator, of F. D. MacKinnon, Esq., K. C., now Mr. Justice MacKinnon, of the King's Bench Division.

In that case the steamship Penlee, on a voyage from Cuba to Queenstown for orders, had incurred port of refuge expenses at Horta in the Azores, and, after sailing thence for Queenstown, had to be abandoned whilst on fire at sea and, with her cargo, became a total loss. The shipowner thereafter brought suit against the cargo owner for its proportionate share of the port of refuge expenses.

It was held by the Court of Appeal that the adventure had terminated when the Penlee was lost at sea, that, consequently, the cargo did not have any value at the termination of the adventure, and that, therefore, under rule XVII of the York-Antwerp Rules 1890, the shipowner, as the creditor interest in the Horta general average, could not recover from the cargo owner its contribution for the port of refuge expenses.

That case shows that the equity of a claim, however strong, cannot be allowed to override the terms of an express contract between the parties.

In this case, too, the equities of the petitioners have to give way to the contract embodied in rule XVII.

■ VII. The contentions of the petitioners suggest, if they do not involve, taking into consideration, in fixing the contributory values of the several interests in a general average, claims against outsiders for damage to the adventure as a whole. Such claims have not hitherto been included in such computation. I do not think they should be so included.

A maritime adventure is a multipartite relationship which is comparable, in a sense, to a partnership between the interests involved. The law of general average, when the contingency arises on which it can properly be invoked, is the partnership law of the adventure, and concerns itself, not with the claims for damage to the adventure by outsiders, but wholly with the equitable adjustment, under its rules, of the rights and

liabilities inter sese of the partners to the adventure. It governs the domestic relations of the adventure, and to import into it, for any purpose, claims against outsiders would be not only to distort it, but to involve it in such practical difficulties as would make the boldest adjuster tremble.

A final decree in accordance with this opinion may be presented for signature on two days' notice.