### STEAM DREDGE NO. 1.

(District Court, D. New Jersey. June 8, 1898.)

1. CORPORATIONS—OFFICERS—COMPENSATION.

The by-laws of a corporation provided that the chief engineer should receive such salary as the directors might fix. The salary was fixed in the manner prescribed, and one of the directors appointed to the office, but subsequently, with the consent of the appointee, the resolution fixing the salary was reconsidered, and all considerations of the matter indefinitely postponed. *Held*, that the chief engineer was not entitled to compensation for his services as such.

2. MASTER AND SERVANT—MONTHLY HIRING—EXTRA TIME.

A superintendent employed by a corporation at a monthly salary cannot claim allowances for working overtime.

3. MARITIME LIENS—WHO MAY CLAIM—SUPERINTENDENT OF STEAM DREDGE.

The superintendent employed on board a steam dredge, not as her master, but as foreman in charge of the working crew, is entitled to a maritime lien upon the dredge or her proceeds for his agreed compensation.

This was a petition by Levi Hussey claiming payment, for services rendered, out of the proceeds, surplus, and remnants arising from the sale of the steam dredge No. 1.

Hyland & Zabriskie, for petitioner.
Sullivan & Cromwell, for claimant.

KIRKPATRICK, District Judge. It appears from the record in this case that dredge No. 1 was libeled for seamen's wages, and that such proceedings were had that she was sold under a decree of this court, and that after the payment of several claims for wages, and the costs and expenses of several suits relating thereto, there still remains in the registry of this court a surplus from the proceeds of such sale. From this surplus the petitioner, Levi Hussey, asks the court to direct the payment to him of the amount of his claim against said dredge No. 1, together with interest and costs. The service of the petitioner on which his claim is founded may be divided into two classes: First, the services rendered as engineer in chief of the company constructing, owning, and operating the dredge; and, second, for services as superintendent of the dredge while it was actually employed in the work for which it was built. The petitioner was appointed engineer in chief by the board of directors of the company owning the dredge, the by-laws of the corporation providing that said officer should receive such compensation as might be fixed by the board of directors.

The petitioner bases his right to compensation for services rendered and work done as engineer in chief upon the resolutions of the board of directors. He cannot recover on a quantum meruit. At a meeting of the board of directors held August 2, 1894, it was "resolved that the salaries of the vice president, secretary, chief engineer, and general manager be, and are hereby, fixed at $2,500 a year from August 1, 1894." At the next meeting of the same board, held September 4, 1894, the minutes show that "on motion of S. W. Thompson, seconded by Warren Roosevelt, a reconsideration of the resolution fixing salaries passed August 2, 1894, was agreed to." And at the same meeting it was resolved that "the subject of salaries to the officers, general manager, and engineer in chief be postponed until such time as the dredge will have been built, is at work, and a net profit accrued from its earnings." The record discloses the fact that the petitioner was one of the directors of the said company, and voted in favor of said resolution, and may therefore be considered as having assented thereto.

The effect of the foregoing resolutions, taken together, was to leave the matter of the compensation of the engineer in chief suspended. The reconsideration of the resolution of August 2, 1894, at the next meeting of the board of directors, in September, 1894, rendered it nugatory, and of no effect, while the postponement of the whole subject to a future day left the question of salaries in the same position as if no action had ever been taken by the directors in relation thereto. That this was the understanding of the parties is apparent from the fact that upon the resignation of the secretary (presented at the meeting of December, 1894), whose salary had by the resolution of August, 1894, been fixed at $2,500 a year, he made no claim for compensation under the resolution, but asked that he might be paid the sum of $1,000, and was by the board awarded $500,

subject to certain restrictions. This view is strengthened by the failure of the petitioner to demand any compensation for his services as engineer in chief from August 1, 1894, as the resolution provided, until the bringing of this suit.

In the absence of any agreement on the part of the company to pay a salary to the engineer in chief for any services he may have rendered as such, it is unnecessary to determine whether, if entitled thereto under the New Jersey statute, he could have been paid the same out of the proceeds of the sale of the dredge, or consider the interpretation put on the statute in Baeder v. Carnie, 44 N. J. Law, 208. I am of the opinion that the petitioner has not shown that he is entitled to have computed, as a part of the amount due him at this time, any salary as engineer in chief which can be paid him out of the proceeds of sale of the dredge now in the registry of the court.

On February 11, 1895, the executive committee of the directors of the Mining & Dredging Company, the owners of said dredge No. 1 in question, reported to the board that, in accordance with authority given them to hire a crew for dredge No. 1, among other things they had hired a superintendent at a salary of $208.33 per month, with board at 50 cents a day allowed the steward, which report was accepted and the minutes approved by the full board. The petitioner was appointed such superintendent, and, as appears from his testimony, entered on the duties of such position March 1, 1895, and continued to perform said duties, with several intermissions, until June 25, 1897.

The superintendent was hired at a salary of $208.33 per month, and I fail to see how, under such an engagement, there can be any allowance for "extra time." If he had been hired by the day, which is understood to mean a certain number of working hours out of each 24, or for "tide work," as were others of the crew, it is easy to understand how, when the prescribed number of hours' work in each day have been worked, demand may be made for proportionate payment for the time worked in excess of the requirement, but no such claim can be presented when one's whole time is paid for by the month or by the year. There should not be any allowance for "overtime." If the petitioner's claim to compensation as superintendent rested alone upon the resolution of February 11, 1895, the amount to which he would be entitled would be a salary at the rate of $208.33 per month from March 1, 1895, to July 25, 1897, less such sums as have been paid him, with proper allowance for interest; but it appears from the testimony of Mr. Stuyvesant that, when the dredge was lying idle, Mr. Hussey voluntarily resigned his position, and did not expect any salary as superintendent; and the testimony of the petitioner himself is to the same effect, that, "when the dredge was not working and earning money, I was not to make a demand for my services." The petitioner has made no demand for compensation for services as superintendent while the dredge was idle. The record shows by the testimony of petitioner that for his services as superintendent he has been paid for all the time he rendered service, except 62½ days. For these, at the rate of $208.33 per month, he is entitled to be paid.

The dredge upon which the petitioner's service was rendered was

adapted to be used in the deepening of harbors and channels, and it was actually engaged during petitioner's service in digging a channel or approach to a dock at which other vessels might land passengers or cargoes of freight. The dredge had within itself the means to propel itself from place to place upon the water, where only it could be used, and had also upon it accommodations for the crew. It was capable of being used as a means of transportation, and did actually transport machinery and a crew from Jersey City, N. J., to Rye, N. Y., as well as between other places. "It is for these reasons the court have held them [dredges] to be subject to admiralty jurisdiction and to the laws of navigation." The International, 83 Fed. 840.

The petitioner's duties as superintendent were to lay out and direct the work of the dredge, and to supervise the men. He was not the master of the vessel; simply a foreman in charge of the working crew. There was also upon the dredge an engineer who looked after the machinery, and a captain who had charge of the movements of the dredge when it was required to swing from place to place. When there was no work to be laid out for the dredge, and no supervision of the men necessary, the duties of the superintendent were suspended. He had no charge of the dredge when idle. In Re Minna, 11 Fed. 759, Judge Brown says: "All hands employed upon a vessel except the master are entitled to a lien if their services are in furtherance of the main object of the enterprise." To the same effect is the case of Laurence v. Flatboat, 84 Fed. 200; while in the case of McRae v. Bowers, 86 Fed. 344, the court goes still further, and holds that "the services of engineer, fireman, deckhands, and captain who work on board a dredging vessel * * * are required in the work in which the vessel is employed and have maritime liens for wages." For the services rendered as superintendent I am of the opinion the petitioner acquired a lien upon the dredge for his wages. Having, then, a lien upon the vessel, he is entitled to share in the proceeds of sale, and may apply by petition for the protection of his interests, under the forty-third rule of the supreme court in admiralty. The Unadilla, 73 Fed. 350; The Lottawanna, 21 Wall. 582.

The claimant is the owner of the vessel, which he purchased at public sale with notice of petitioner's claim. As between the claimant and the petitioner, the petitioner is entitled to preference in the distribution of the surplus fund in the registry of the court. Let a decree be prepared in accordance with these views.

---

THE FRANK VANDERKERCHEN.

(District Court, D. New Jersey. May 20, 1898.)

ADMIRALTY JURISDICTION—SUITS IN REM—STIPULATION WITHOUT SEIZURE.
  Where a libel in rem is filed against a vessel then within the jurisdiction, and, without issuance of monition or seizure of the vessel, the claimants voluntarily give a stipulation for value conditioned to perform and pay any decrees rendered, the court has jurisdiction to proceed with the cause just as if the vessel had first been seized, and a stipulation then given.