## HOLMES v. CITY OF NEW YORK.

Circuit Court of Appeals, Second Circuit.
January 7, 1929.

No. 146.

George P. Nicholson, Corp. Counsel, of New York City (Charles J. Carroll and William J. Leonard, both of New York City, of counsel), for appellant.

Purrington & McConnell, of New York City (Frank J. McConnell and James D. Brown, both of New York City, of counsel), for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. This is a libel for salvage. There was a fire on Pier No. 46, East River, in the city of New York, which started in the middle of the night in some paper and refuse. A wind was blowing from the northwest, which blew the burning paper on the scow Robert J., which lay at the bulkhead and along the south side of the pier, and set the scow on fire. The dumper D. S. C. T., belonging to the city of New York, lay further out on the south side of the same pier, with two hatches open. Some of the burning refuse was blown by the wind on the deck of the dumper, and also into her holds, so that the dumper was in danger of serious damage. Though a city fireboat came to the spot to render assistance, at the time the tug arrived no one had come to put out the fire, and the salvage of the dumper was all performed by the J. Rich Steers, her master and crew.

The master of the dumper was in bed and asleep on his barge, and did not wake up until the libelant Holmes, master of the tug J. Rich Steers, saw the fire and came up from Thirty-Third street to the Forty-Sixth street pier. He waked up her master, found her bow line burned off, and towed her by the stern down to a place of safety at Thirty-Third street. The tug used her pump to play her hose on the dumper and put out the fire. The salvage apparently only took half an hour from the time the tug arrived at Forty-Sixth street until the dumper reached Thirty-Third street. No repairs to the dumper were necessary, and indeed the master of the tug testified that "there was no damage." The tug was worth $35,000 at the time of the salvage, and the dumper $42,000. After the J. Rich Steers had salved the dumper, she went back to assist the scow Robert J., with whose owners a settlement of claims for salvage was made at the sum of $300.

The trial court allowed $2,000 for salvage services to the dumper, but found that the basis of the recovery was "more particularly the towing of the boat from a place of danger to a place of safety," and that "the fire on the salvaged boat was inconsequential."

The libel alleged that libelant was master of the tug J. Rich Steers, and named the seamen who were members of the crew, and in addition to the libelant himself were engaged in the adventure. It began with the words: "The libel and complaint of Arthur J. Holmes, for himself and on behalf of all others entitled, * * *" and, after reciting the work done in removing the dumper to a place of safety and the extinguishment of the fire, alleged that "by reason of the services so performed libelant and the other members of the crew of the tug * * * are justly entitled to a material salvage award."

The libel nowhere mentioned the owner of the tug, nor in terms claimed salvage on his account. The fire was in the morning of March 19, 1924, and the libel was filed February 3, 1926. In February, 1928, Henry Steers, Inc., the owner of the tug J. Rich Steers, filed its petition for leave to intervene in the salvage suit, evidently fearing that the libel might be insufficient to afford relief to anyone except the master and crew. The application was granted, and an order of intervention made and filed.

The appellant, the city of New York, objects to the award because (1) the libel as filed only sought relief for the master and crew, and any rights of the owner of the tug were barred by the two-year statute of limitations applicable to salvage cases; (2) the award was excessive.

The first objection neglects the consideration that the suit by the master was representative in form. The libel is "for himself and all others entitled." In The Blackwall, 10 Wall. at page 10, 19 L. Ed. 870, it was said that:

"Salvage suits are frequently promoted by the master alone, in behalf of himself and the owners and crew, or in behalf of the owners and crew, or the owners alone, without making any claim in his own behalf, and the practice has never led to any practical difficulty, as the whole subject, in case of controversy, is within the control of the court."

In The Camanche, 8 Wall. 448, 19 L. Ed. 397, where the owners of the salving vessel alone brought suit, it was objected that they were not the sole salvors, and that the procedure adopted might subject the claimants to a second suit; but it was held that all persons interested might become parties and have their rights adjudicated, and it was stated that in many cases such persons had been allowed to appear at any time before the fund was distributed and claim their share in the award. Many years before, in The Henry Ewbank, 11 Fed. Cas. at page 1169, No. 6,376, Justice Story had severely criticized the practice of filing separate libels in salvage cases, and Judge Choate later said, in The S. S. Leipsic (D. C.) 5 F. 108, where the owner had filed a libel without joining the master and crew, that compensa-

tion should be made for the entire salvage service, and the portion awarded to master and crew should be paid into the registry of the court, to await their application for it.

█ It may be said that all the foregoing decisions were made in cases where the proceedings were in rem, but they went farther than was necessary to justify intervention by an interested party in a suit in personam, where the original libel was filed by the master "for himself and all others entitled." Everything said by Justice Story in The Henry Ewbank, supra, against separate libels, would seem to support the practice adopted in this case, and the only criticism that can be made is of the failure of the libelant to allege that the Henry Steers, Inc., was the owner of the salving tug. That is a mere technical omission, that can be cured by proof or by intervention.

In The Flottbek (C. C. A.) 118 F. 954, the libels were brought by the owners, for themselves "and on behalf of the master, officers, and crew," and did not name the officers and crew. It was objected that there was a defect of parties, and there was no order of intervention. The Circuit Court of Appeals of the Ninth Circuit said that the form in which the suit was brought "followed a practice which prevails in admiralty"; that it would "have been better to have mentioned all the names of the officers and crew, * * * but the object of naming them is simply to bring them before the court, so that it will know the names of the officers and crew entitled to an award. This was done * * * by the evidence."

█ While we are referred to no decision in which a libel by the master, on behalf of himself and all parties interested, has been held sufficient to include the owner, the language of the Supreme Court in The Blackwall, supra, which we have quoted, would seem to cover such a case, and the libel by the owners, for themselves and on behalf of the officers and crew, sanctioned in The Flottbek, supra, undoubtedly involved the same principle. Where owner, master, and crew are all entitled to salvage, it must be quite immaterial whether a representative suit is brought by the owner or by the master. The order of intervention appears to have been unnecessary, because the master could sue for all parties in interest, including the owner. The Blackwall, 10 Wall. 1, 19 L. Ed. 870; The Flottbek (C. C. A.) 118 F. 954; Castner, Curran & Bullitt, Inc., v. United States (C. C. A.) 5 F.(2d) 214.

It is a general characteristic of the admiralty, and a useful advantage of its flex-ible procedure, that the master or owner of a vessel may bring, in his own name, actions which other interested parties may have in relation to the ship, her cargo, freight, and passengers. Benedict, Admiralty (5th Ed.) § 248; The Propeller Commerce, 1 Black, at page 582, 17 L. Ed. 107; The Commander in Chief, 1 Wall. 43, 17 L. Ed. 609; The Beaconsfield, 158 U. S. 303, 15 S. Ct. 860, 39 L. Ed. 993; Disney v. Furness, Withy & Co. (D. C.) 79 F. 813. Thus either the master or owner may bring suit in his own name on behalf of the cargo for collision damages, or on behalf of the owner to recover for breaches of contracts of affreightment. Disney v. Furness, Withy & Co., supra. Undoubtedly the fields in which suitors in admiralty have most frequently employed this convenient practice have been those of prize and salvage cases, and of suits for the adjustment of general average.

█ But even if, as a matter of proper pleading, an order of intervention was necessary, it was only a means of bringing the owner of the tug into a pending suit, in order to prosecute a claim for salvage already embraced in the libel filed by the master and subsidiary to it. The petition of Henry Steers, Inc., for intervention did not set up a new cause of action, but asserted a claim covered by the main suit, as to which the statute of limitations had not run. In such circumstances, the running of the statute is determined by the date of the original suit, and not by the date of the petition for intervention. Richmond v. Irons, 121 U. S. 27, 7 S. Ct. 788, 30 L. Ed. 864; United States v. Middleton (C. C. A.) 3 F.(2d) 384; Brinckerhoff v. Bostwick, 99 N. Y. 185, 1 N. E. 663. The statute, therefore, had not run in the present case, and a salvage award was properly made in favor of the owner, master, and crew.

█ Coming to the amount of compensation allowed, we feel obliged to differ with the court below. It is true that, if the tug had not gone up to the Forty-Sixth street pier, towed the dumper to a place of safety, and put out the burning refuse, there might have been a heavy loss. But this was accomplished without any real danger to the tug or her crew, and in a brief time. While the adventure came within the category of a salvage service, it involved little more in risk and effort than towage, and the fire was so slight that it did no real injury.

In the circumstances, an award of $1,000 is sufficient (The Independent [C. C. A.] 14 F.(2d) 115), and the decree is modified to that extent, and otherwise affirmed.