UNITED STATES of America, Appellant,

v.

MARYLAND CASUALTY COMPANY, Appellee.

UNITED STATES of America, Appellant,

v.

HIBERNIA NATIONAL BANK IN NEW ORLEANS, Appellee.

Nos. 15963, 15964.

United States Court of Appeals
Fifth Circuit.

June 30, 1956.

Geo. S. Leonard, Acting Asst. Atty. Gen., Charles S. Haight, Jr., Atty. Dept. of Justice, Washington, D. C., C. W. Eggart, Jr., Asst. U. S. Atty., Pensacola, Fla., Harrold Carswell, U. S. Atty., Tallahassee, Fla., Leavenworth Colby, Dept. of Justice, Washington, D. C., for appellant.

E. Dixie Beggs, of Yonge, Beggs & Lane, Pensacola, Fla., for appellees.

Before RIVES, CAMERON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Over the objection of two holders of ordinary, simple non-maritime, non-preferred mortgages covering the tugs Dixie and Juno, the District Court declined to permit the Government to file against the proceeds of the sale of the tugs interventions asserting claims [1] for collision damage to governmental navigational aids and works. Resisting the importunities through a literal application of its local Admiralty Rule 32 [2] to being involved in the elusive question of its validity as an attempt to alter substantive principles or authoritative Supreme Court Rules, cf. Washington-Southern Navigation Co. v. Baltimore & Philadel-

---

1. Juno case: collision January 6, 1954, with Pensacola Mobile Light No. 15 located in Florida; amount claimed $500 (remaining unpaid as the owner's deductible franchise after payment of balance of original claim $2,283.97 by tug's underwriters) plus statutory penalties presumably $500 to $2,500, 33 U.S.C.A. §§ 408, 411, 412.

Dixie case: collision May 13, 1951, with Paris Road Bridge near New Orleans, Louisiana; amount $235.24 plus statutory penalty. Collision November 10, 1954, with Harvey Lock in Louisiana; amount $222.35 plus statutory penalty.

2. Local Admiralty Rule 32, U.S. District Court, Northern District of Florida, 31 F.S.A.: "Claims After Sale, * * *. In proceedings in rem, after a sale of the property under a final decree, claims upon the proceeds of sale, except for seamen's wages, will not be admitted in behalf of lienors filing libels of petitioners after the sale, to the prejudice of lienors under libels filed before the sale, but shall be limited to the remnants and surplus unless for cause shown it shall be otherwise ordered." Substantially this same rule exists for the Eastern, Southern and Northern Districts of New York and the Southern District of Texas, 5 Benedict on Admiralty (6th Edition), 55, 82, 68 and 226.

phia Steamboat Co., 263 U.S. 629, 44 S. Ct. 220, 68 L.Ed. 480; Petition of Liverpool, Brazil & River Plate Steam Navigation Company, 2 Cir., 57 F.2d 176, 1932 A.M.C. 608; Criscuolo v. Atlas Imperial Diesel Engine Co., 9 Cir., 84 F.2d 273, 1936 A.M.C. 1086; Dowling v. Isthmiam S. S. Corp., 3 Cir., 184 F.2d 758, 1950 A.M.C. 1876, certiorari denied 340 U.S. 935, 71 S.Ct. 493, 95 L.Ed. 675, the District Judge, simply and forthrightly, thought that, "A time arrives in an Admiralty case when it becomes too late to file intervening petitions seeking to participate in the funds on deposit in the registry of the court and this is such a case."

This was, we think, an erroneous conclusion which flowed, rather understandably, from two misconceptions: first, the status of the objecting mortgagees insofar as that bore on the race for time; and, second, the status of the whole case as one having at the time of the filing of the interventions been "finally" adjudicated or still under the active control of the Court requiring subsequent action.

As the owner, Hyer Towing Company, Inc., became financially involved, a libel in rem was filed on March 23, 1955, against each of the two tugs, respectively (similar libels were filed against four other remaining tugs of the fleet) by maritime lienors. Interventions followed by numerous maritime lienors, these two mortgagees and by the Government in its role as the ubiquitous tax gatherer. No objections at that stage were apparently made to the interventions by the mortgagees presumably because all recognized that they had an inferior rank subordinate to all maritime liens. The tugs were sold by the Marshal in May and the sale confirmed June 2, 1955. On July 14, 1955, a general hearing was had to determine priorities. While there may have been no significant change in the Court's indication of priority ranking subsequent to the hearing of July 14, 1955, substantial, nonformal action was, or was to be, subsequently taken in each.[3] Before these pending and reserved matters had been determined or any orders actually disposing of the cases finally were entered, the Government filed its interventions in each on August 9, 1955. On November 15, 1955, the Court granted the motion of the mortgagees to dismiss the Government's interventions as untimely filed.

■ In this chronology, the non-maritime nature of these mortgage claims narrows the race for time. For being non-maritime and clearly beyond the jurisdiction of Admiralty, Bogart v. The John Jay, 17 How. 399, 58 U.S. 399, 15 L.Ed. 95; Robinson, Admiralty, page 440 (1939); Morse Dry Dock & Repair Co. v. The Northern Star, 271 U.S. 552, 46 S. Ct. 589, 70 L.Ed. 1082, the intervention was permissive and incipient only having no right or standing under Supreme Court Admiralty Rule 34,[4] The Eclipse,

---

3. The Dixie case: The Court determined certain priorities but made no distribution pending the filing of memorandum brief by a lienor claimant no longer in the case. On October 3, 1955, the Court disallowed one claim, directed payment of three others, and directed that the remaining funds be held subject to later disposition.

The Juno case: On July 22, 1955, following the hearing of July 14 on priorities, the Court directed payments to certain claimants not parties to this appeal and retained the remainder of the funds in the registry pending a final adjudication of claims and priorities. After the opening recital, "This cause coming on for a final hearing and order of distribution * * *", the decree expressly allowed to Hibernia National Bank, the non-maritime mortgagee, a payment of but $10,000 on its mortgage claim of $16,000, and then provided, "* * * the Court retains the remaining claims against the balance of the said fund for future adjudication."

4. Supreme Court Admiralty Rule 34, 28 U.S.C.A. "*How third party may intervene.* If any third person shall intervene in any cause of admiralty and maritime jurisdiction in rem for his own interest, and he is entitled, according to the course of admiralty proceedings, to be heard therein, he shall propound the matter in suitable allegations, * * *; and such further proceedings shall be had and decree rendered by the court therein as to law and justice shall appertain. * * *"

135 U.S. 599, 608, 10 S.Ct. 873, 34 L.Ed. 269, until, on June 2, 1955, when the sale was confirmed, these non-maritime claims could, for the first time, intervene against the proceeds under Admiralty Rule 42,[5] 2 Benedict, supra, page 512; The J. E. Rumbell, 148 U.S. 1, 13 S.Ct. 498, 37 L. Ed. 345; The Livingstone, D.C.W.D.N. Y., 122 F. 278.

These competing interventions were, therefore, only slightly apart and were all filed while the Court was continuing to exert its superintendence over these unfinished cases. This brought into play Rule 42 which significantly enough speaks in terms of the "right" to intervene. These rules likewise reflect the general policy of liberality in the allowance of intervention by a maritime lienor whose claim might otherwise evaporate unless he can effectively assert it against the *thing* or the proceeds, The Hamilton, 207 U.S. 398, 406, 28 S.Ct. 133, 52 L.Ed. 264; The Steam Dredge No. 1, D.C.N. J., 87 F. 760, 763; The Unadilla, D.C. N.D.Ill., 73 F. 350; The Charles D. Leffler, 3 Cir., 100 F.2d 759, 1939 A.M.C. 183; The Lottawanna, 21 Wall. 558, at page 582, 88 U.S. 558, at page 582, 22 L. Ed. 654; The Lottawanna, 20 Wall. 201, 87 U.S. 201, 22 L.Ed. 259; The Oregon, 158 U.S. 186, 210, 15 S.Ct. 804, 39 L.Ed. 943; The Etna, 3 Cir., 138 F.2d 37, 1943 A.M.C. 1126; The Commack, D.C.S.D. Fla., 3 F.2d 704, 1925 A.M.C. 499; The Hammond, D.C.S.D.Fla., 17 F.2d 118, 1927 A.M.C. 28; cf. The Admiral, 5 Cir., 208 F.2d 461, 1954 A.M.C. 92. But while these factors would permit these interventions, the longer they were delayed, the closer the total cases were to approaching an end, the more the Government as intervenor, had to demonstrate that equitable considerations, Andrews v. Wall, 3 How. 568, 572, 44 U.S. 568, 572, 11 L.Ed. 729; The John E. Mulford, D.C.

S.D.N.Y., 18 F. 455, 459; Defense Plant Corp. v. United States Barge Lines, 2 Cir., 145 F.2d 766, 1945 A.M.C. 15; cf. The Clara A. McIntyre, D.C.E.D.N.C., 94 F. 552, cf. Holmes v. City of New York, 2 Cir., 30 F.2d 366, 1929 A.M.C. 216; The American Eagle, D.C.Del., 28 F.2d 1000, 1929 A.M.C. 105; Sheldrake v. The Chatfield, D.C.E.D.Va., 52 F. 495; Petition of Sanuiti, D.C.N.D.N.Y., 124 F. Supp. 69, 1954 A.M.C. 990, suggested that justice and fairness required the allowance of them.

■ Beseeching the Court on equitable terms for leave to intervene, the Government is and ought to be treated as would be any other suitor, for " * * when government invokes the aid of the court as a litigant it stands as any other litigant * * *", Jones v. Watts, 5 Cir., 142 F.2d 575, 577, 163 A.L.R. 240, certiorari denied 323 U.S. 787, 65 S.Ct. 310, 89 L.Ed. 628; In re Minot Auto Co., 8 Cir., 298 F. 853, 857. Standing thus on the outside with much of the case already disposed of, the door had to be opened for it. It could be opened only by the touch of the want of equity and not by the sheer weight or the loud peremptory knock of the sovereign's scepter. Laches which would ordinarily be ineffectual in denying a claim by the Government, United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283; United States v. Alex Dussel Iron Works, 5 Cir., 31 F.2d 535, 537, 1929 A.M.C. 573, would therefore visit the same consequences upon the sovereign as it would a citizen where the request to open the portal is through the appeal and power of equity.

■ We think that the Government satisfied these equitable considerations as to most of the claims asserted and the prejudice which the mortgagees contend

---

5. Supreme Court Admiralty Rule 42. *"Claims against proceeds in registry.* Any person having an interest in any proceeds in the registry of the court shall have a right, by petition and summary proceedings, to intervene pro interesse suo for delivery thereof to him, and on due notice to the adverse parties, if any, the court shall and may proceed summarily to hear and decide thereon, and to decree therein according to law and justice. * * *"

**54**

they suffer is in reality not from the interventions but the low order of their priority ranking, The Guiding Star, C.C. S.D.Ohio, 18 F. 263, 264; The William Leishear, D.C.Md., 21 F.2d 862, 863, 1927 A.M.C. 1770; Todd Shipyards Corp. v. The City of Athens, D.C.Md., 83 F.Supp. 67, 1949 A.M.C. 572. But we think that the District Court acted well within the limitations of its permissible informed discretion, Defense Plant Corp. v. United States Barge Lines, supra; Holmes v. City of New York, supra; The American Eagle, supra, in impliedly rejecting the claims for statutory penalties and to that we would add the Dixie collision of May 13, 1951 (note 1, supra). With the owner insolvent, his vessels all sold on the Marshal's block, his employees dispersed, it would be an impossibility to contest a claim as stale and ancient as that one. This is all the more important regarding the statutory penalties which, in addition to the usual problems of determining civil collision responsibility involve questions whether the conduct of the crews of the offending tugs met the terms of the Statute, 33 U.S.C.A. § 412, of those who "willfully injure or destroy any work" protected by Section 408, and whether the tug itself *violated* Section 408 or 409.

Hearkening to the still small voice of the conscience of a seagoing Chancellor, the Court may well have thought that this posed problems of proof, legal accountability, and statutory construction so complex or doubtful that it would be an injustice for the diligent and timely claimants to sit idly by for an indefinite time while a rich and resourceful sovereign, unfettered by the considerations of cost or expense which move a private litigant, ground these academic matters through the mill. And to this we may append such penalties are totally lacking in equitable appeal. They should have a low rank in competing with bona fide contract claims, even though non-maritime, of innocent third persons, see 4 Benedict, supra, page 180; 1 Benedict, supra, page 273, note 92.

The decree is therefore reversed and modified to allow the interventions for the claims for damage other than the Dixie collision of May 13, 1951, and the statutory penalties in all of the cases.

Reversed and modified.