George F. CRABTREE, Appellant,

v.

THE SS JULIA, etc., Appellee.

No. 18767.

United States Court of Appeals
Fifth Circuit.

May 19, 1961.

Newton B. Schwartz, Houston, Tex., for appellant.

Before TUTTLE, Chief Judge, and HUTCHESON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This case concerns the right of a maritime lienor to intervene by a libel *in rem* against the proceeds in the registry of the admiralty court after a sale of the vessel. The trial court declined to permit intervention. We disagree.

The facts are very simple. The SS Julia was first arrested under a writ of seizure on January 9, 1960. Thereafter there followed a succession of intervening libels by various creditors. These included claims of maritime lienors, perhaps some for nonmaritime liens, for crews' wages, transportation and similar wage rights. They also included a principal claim for foreclosure of a preferred ship mortgage, 46 U.S.C.A. § 951. These claims now, we are told, aggregate

over $500,000. Before any, or at least any substantial claims were adjudicated in any way, the trial court, apparently with the full approval of all claimants ordered the vessel sold. This was to put an end to useless expenses growing out of her languishing in the Marshal's custody. On March 9, 1960, she was sold for $210,250. Upon confirmation of the sale, the amount was paid into the registry where under further special, but apparently agreed orders, the amount was ordered invested in interest-bearing bank certificates of deposit. Approximately $25,000 has been disbursed for Marshal's expenses, claims for upkeep during legal custody, and the like. In addition, after hearings before a Commissioner, wage claims of the crew members were adjudicated. It seems safe to say that there remains for all of the creditors approximately $200,000 in the registry.[1]

Prior to adjudication of any claim or even the filing of the Commissioner's report on certain wage claims, the Court on June 17, 1960, pursuant to an earlier motion of the preferred ship mortgagee noted the default of all persons not there-tofore filing intervening libels.[2] Thereafter, on August 11, 1960, at a time still prior to any adjudication of validity, priority or ranking of competing claims, Crabtree, the appellant here, sought leave to file an intervening libel for maintenance, wages and cure, and for damages due to personal injuries sustained by him on September 26, 1959, while a member of the crew of the SS Julia. Both initially and after strenuous motions for rehearing, the District Judge declined to grant leave to file. Between the time of the initial application and the denial of rehearing on November 7, 1960, no significant action was taken as to the adjudication of any claims.[3]

Nothing in this record[4] indicates any circumstances why leave to file was denied, or why it should be.

■■■ The proposed libel of intervention, set forth in traditional verified form, the classic claim for injuries received in the service of the ship on the basis of unseaworthiness of the vessel. It sought specific sums for maintenance and cure during convalescence subsequent to discharge from the Public

---

1. Under our rules, printing of the record was dispensed with. We have, pursuant to Rule 23(10) of this Court, 28 U.S. C.A., inspected the original papers in the District Clerk's file as to this general background information.

2. Because of the large number of intervening libellants the Court apparently thought it prudent to bring it all to a head. This device was presumably an adaptation of the practice in a limitation of liability proceeding where the default of potential claimants is noted. See 3 Benedict, Admiralty § 521 at 548, Supreme Court Admiralty Rules 51 to 55. In the usual situation of a libel, the default noted is that of the respondent, or the one required to file an answer and claim as owner, etc. 2 Benedict, Admiralty §§ 310–318, 324–327 at 410–23, 434–50.

3. Approximately $25,00 was paid out pursuant to court order for Marshal's fees, expenses, and the like. Shortly after completion of this appeal, the District Court's records indicate that the Court sustained, except in one respect, the Commissioner's report on crew's wages. The record also reflects that the Commissioner has heard proofs on all of the other claims but no report has yet been filed.

On November 5, 1960 the Court expressly reaffirmed its earlier order of June 17, see note 2, supra, noting defaults and provided further that "no additional libels or claims of any kind, other than those heretofore failed may be filed herein, and the Clerk is directed not to receive or file any such herein."

4. The principal creditor, the preferred ship mortgagee, by letter to our Clerk stated it would not file a brief in opposition to the appeal "even though" such counsel thought, the District "Court's action was proper." With a responsible candor counsel acknowledge that "the protracted delay in the handling of the matter before the Commissioner and the other delays incident to the matter are such" that he could "not honestly inform the Court that the late filing of this claim has prejudiced" his "clients more than the other delays * * *."

Health Service ($296), for wages to the end of the voyage ($611.06) and for damages. A claim under the Jones Act, 46 U.S.C.A. § 688, is not time-barred for three years, 45 U.S.C.A. § 56. The claim *in rem* for unseaworthiness is, we may assume, controlled finally by laches. But "Laches is much more than time. It is time plus prejudicial harm, and the harm is not merely that one loses what he otherwise would have kept, but that delay has subjected him to a disadvantage in asserting and establishing his claimed right or defense." Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co., 5 Cir., 1958, 261 F.2d 861, 865, 1959 A.M.C. 148. And in any event, time beyond the statute of limitations period had never begun to run. Under McAllister v. Magnolia Petroleum Co., 1958, 357 U.S. 221, 225, 78 S.Ct. 1201, 2 L.Ed. 2d 1272, 1958 A.M.C. 1754, the limitation period for a seaworthiness claim is not controlled by state law. It parallels that of the Jones Act. And there was certainly nothing on the face of the proposed libel to suggest laches in the sense of time beyond the analogous statute of limitations, state or federal. Consequently, there was no occasion to apply the principles enunciated in McDaniel v. Gulf & South American Steamship Co., 5 Cir., 1955, 228 F.2d 189, 192, 1956 A.M.C. 105, 108, and Morales v. Moore-McCormack Lines, Inc., 5 Cir., 1953, 208 F.2d 218, 1954 A.M.C. 87.

 Nothing in Local Admiralty Rule 37 justified, at that time, an outright refusal to grant leave to file.[5] By its terms

this applies "after a sale of the property under a final decree." Here the SS Julia was sold, but it is hardly under a final decree. It was sold to preserve the *res* and to conserve the estate against improvident and unnecessary expenses. At the time of the sale, however, no substantial amount of the claims had been adjudicated nor had they been at the time the Court undertook to deny leave to file the intervening libel. Next, it expressly excepts "seamen's wages" a category which encompasses at least a portion of the claims in the proposed libels. Finally, the Rule does not purport to deny leave to file in order to determine whether it is a claim of a kind entitled to participate in the "remnants and surplus" nor, more important, does it purport to deny leave to file in order to determine whether good "cause shown" exists which would require that participation with competing pre-sale lienors should "be otherwise ordered."

 That brought into play Supreme Court Admiralty Rule 42,[6] and in part Rule 34, 28 U.S.C.A. Intervention under Supreme Court Admiralty Rule 34, where otherwise available, applies both in cases where the vessel is still in custody or where she has been sold and the proceeds paid into the registry of the court. See The Oregon, 1895, 158 U.S. 186, 210, 15 S.Ct. 804, 39 L.Ed. 943. It was of Rule 42 that we remarked, it "significantly enough speaks in terms of the 'right' to intervene." United States v. Maryland Casualty Co., 5 Cir., 1956, 235 F.2d 50, at page 53. As a prelude

5. Rule 37, Southern District of Texas, provides:
"In proceedings in rem, after a sale of the property under a final decree, claims upon the proceeds of sale, except for seamen's wages, will not be admitted in behalf of lienors filing libels or petitions after the sale, to the prejudice of lienors under libels filed before the sale, but shall be limited to the remnants and surplus unless for cause shown it shall be otherwise ordered."
As we pointed out in United States v. Maryland Casualty Co., 5 Cir., 1956, 235 F.2d 50, 51, note 2, 1956 A.M.C. 1822,

this is substantially identical with Rule 32 of the Florida District Court there involved.

6. *"Claims against proceeds in registry.* Any person having an interest in any proceeds in the registry of the court shall have a right, by petition and summary proceedings, to intervene pro interesse suo for delivery thereof to him, and on due notice to the adverse parties, if any, the court shall and may proceed summarily to hear and decide thereon, and to decree therein according to law and justice. * * *."

to a number of cited cases we commented further that these " * * * rules likewise reflect the general policy of liberality in the allowance of intervention by a maritime lienor whose claim might otherwise evaporate unless he can effectively assert it against the *thing* or the proceeds * * *." 235 F.2d 50, at page 53.

It is, of course, too early to talk about priority and ranking of the claim. That is a matter which must await the filing of the libel of intervention and an appropriate hearing on its merits in competition with the other claims. If successfully established on the facts, however, these claims asserted by former seamen ordinarily have a very high rating. They would constitute "preferred maritime liens" under the Ship Mortgage Act, 46 U.S.C.A. § 953 (a). They specifically take priority over the mortgage whether they arise before or after the recordation of the mortgage. Gilmore & Black, The Law of Admiralty § 9–68 at 611; Merchants & Marine Bank v. The T. E. Welles, 5 Cir., 1961, 289 F.2d 188.

It must be borne in mind that in the assertion of an *in rem* claim which a seaman is entitled to make for injuries resulting from unseaworthiness, this is the libellant's one and only chance. If he fails now, he is forever foreclosed. In Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Company, 5 Cir., 1958, 261 F.2d 861, 866, 1959 A.M.C. 148, we put it this way. "Liberality in allowing interventions mirrors not alone admiralty's approach to do justice with slight regard to formal matters. It is a recognition of the unavoidable consequence of a sale of a vessel in an *in rem* proceeding. The sale cuts off the right of all non-parties. The title from the Marshal is good against the world. Unless one claiming a lien is given the opportunity of asserting his right as against the proceeds resulting from the sale which has been made or is in the course of being carried out, the rights are forever and irretrievably lost."

We refrain from indicating priorities, relative rank and validity. More than that, we also make clear at this point that we do not undertake to blueprint the conditions which the trial court might reasonably impose either outright at the time of the allowance of intervention or as conditions might require from time to time thereafter. It will certainly be within the sound, considered discretion of the Judge to look upon this claim coming in at the time it was proffered in the light of the total picture of some $500,000 of claims against available registry funds of less than half of that amount. What appears now to be a very small tail should not retroactively be allowed to wag such a considerable dog. Apparently extensive hearings have been held before the Commissioner. By the time our decision becomes final, the Commissioner may have filed a report. Certainly there is nothing suggested here to indicate that it is either necessary or desirable to wipe out all of this protracted labor or the fruits of it. Of persons coming in late even though without any legal fault or neglect, we have said, "Such intervenors may well have to take the case as they find it." Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Company, supra, 261 F.2d 861, at page 868. We entertain no doubt that the trial judge in the exercise of wise and careful discretion will be able to find a way to accommodate the rights of this claim and those of all other claimants whose proofs have been heard. A means may readily be adapted to the end that the relative rank, priority, preference and validity is accorded to each claim without the wasteful necessity of a rehearing or retrial of all that has gone before.

Reversed.