**KEY BANK OF WASHINGTON, formerly Key Bank of Puget Sound, Plaintiff–Appellant,**

v.

**SOUTHERN COMFORT, Off. No. 628988, her engines, machinery, appurtenances; Southern Comfort Inc.; Thomas B. Slater; James R. Venner; Barbara A. Venner, and their marital community, Defendants,**

v.

**Jerrold ERICKSON; Richard Newby; Harry Allman; Plaintiffs–Intervenors,**

and

**James Branda, Plaintiff–Intervenor–Appellee.**

No. 95–35787.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 8, 1996.[1]

Decided Feb. 10, 1997.

---

1. The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a), Ninth Circuit Rule 34–4.

John E. Casperson, Faulkner, Banfield, Doogan, & Holmes, Seattle, WA, for plaintiff-appellant.

Jeffrey C. Mirsepasy, Seattle, WA, for intervenor-appellee.

Before: BEEZER and O'SCANNLAIN, Circuit Judges, and BROWNING, District Judge.[2]

WILLIAM D. BROWNING, District Judge:

Plaintiff/Appellant Key Bank appeals an *in personam* judgment rendered by the district court. The district court entered judgment against Key Bank for wages owed Intervenor/Appellee Branda while he was employed by the SOUTHERN COMFORT ("the Ship"), upon which Key Bank had foreclosed and which Key Bank had subsequently purchased on a credit bid. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

We review the district court's conclusions of law de novo. *B.P. North America Trading, Inc. v. Vessel PANAMAX NOVA,* 784 F.2d 975, 977 (9th Cir.1986), *cert. denied,* 479 U.S. 849, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986). The determination of timeliness on an application to intervene is reviewed for abuse of discretion. *Yniguez v. Arizona,* 939 F.2d 727, 730 (9th Cir.1991).

II

Key Bank relies on 46 U.S.C. § 10602(a) in arguing that Branda's claim is time barred. Section 10602(a) reads as follows:

When fish caught under an agreement under section 10601 of this title are delivered to the owner of the vessel for processing and are sold, the vessel is liable in rem for the wages and shares of the proceeds of the seaman. *An action under this section*

**2.** The Honorable William D. Browning, United States District Judge for the District of Arizona, sitting by designation.

*must be brought within six months after the sale of the fish.*

(Emphasis added.) The district court concluded that Branda's claim was not time barred despite the statute because Branda had filed a claim with the Coast Guard within the designated time period. Key Bank argues that filing a claim with the Coast Guard does not constitute an "action" for purposes of § 10602(a) and that the district court did not rely on equitable tolling in allowing Branda's claim. Branda argues that, even if his claim with the Coast Guard does not constitute an "action" under § 10602(a), the district court properly relied on equitable principles in allowing his intervention; further, Branda argues that § 10602(a) does not apply to his claim because he had no written agreement regarding his wages as required in § 10601.

A Coast Guard claim by definition does not constitute an "action" for the purposes of § 10602(a). The plain language of the statute contains nothing to suggest that an action should be defined any differently than it is defined in federal courts. The Federal Rules of Civil Procedure state that "[t]here shall be one form of action to be known as 'civil action'" and that an action requires the filing of a complaint with the Court. Fed.R.Civ.P. 2 & 3. Thus, the district court erred in concluding that Branda's filing of a claim with the Coast Guard was equivalent to filing an "action" under § 10602(a).

■ This conclusion does not end our analysis, however. By its language, § 10602 seems to apply only to written agreements formed pursuant to § 10601. *In Fuller v. Golden Age Fisheries,* 14 F.3d 1405 (9th Cir.1994), *cert. denied,* 512 U.S. 1206, 114 S.Ct. 2677, 129 L.Ed.2d 812 (1994), this Court cast doubt on this interpretation when it suggested, in dicta, that § 10602 may cover both oral and written agreements. The Court made this suggestion while interpreting the "savings clause" in § 10602(c).[3] The Court offered two alternative readings:

> The district court concluded that the savings clause merely preserves a seaman's common law right to bring an action for wages when there is no written agreement under § 10601. An alternative reading is that the savings clause preserves a seaman's right to proceed in *personam* against the vessel's owners for breach of a written *or oral* fishing agreement.

*Id.* at 1407 (emphasis added). District courts interpreting *Fuller* have split over which reading is most appropriate. We now conclude that § 10602 is limited by its plain meaning to written agreements. Further, the statute of limitations in § 10602(a) provides a benefit to employers by placing a time limit on suits brought by seamen. Employers should not be able to take advantage of this limitation without first complying with the requirements of a written agreement as established in § 10601. Written agreements were first required for the seamen's, not the employers', protection, *Kossick v. United Fruit Co.,* 365 U.S. 731, 734 n. 4, 81 S.Ct. 886, 889 n. 4, 6 L.Ed.2d 56 (1961), and this requirement should not work against the groups it was meant to protect. The legislative history is silent as to any interpretation of § 10602, and, although it would be possible for Congress to adopt a similar limitations period for oral agreements, § 10602 addresses limitations only for written agreements.[4]

## III

■ The SOUTHERN COMFORT was sold pursuant to 46 U.S.C. § 31326(a), which states that "any claim in the vessel existing on the date of sale is terminated . . . and the vessel is sold free of all those claims." Key Bank relies on this statute to argue that, once the SOUTHERN COMFORT was sold at auction, Branda's lien could no longer attach to the ship. Key Bank further argues

---

3. The savings clause reads: "This section does not affect a common law right of a seaman to bring an action to recover the seaman's share of the fish or proceeds."

4. We would affirm the district court even were we not to conclude that the statute of limitations in § 10602 applies only to written agreements. A court, in its discretion, may allow equitable tolling if a "claimant has received inadequate notice." *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 150–51, 104 S.Ct. 1723, 1725–26, 80 L.Ed.2d 196 (1984). Sufficient evidence exists to justify the district court's conclusion that Branda did not receive proper notice of the foreclosure action.

that, although § 31326(b) allows the lien to attach to the proceeds of the sale, in this case there were no proceeds because Key Bank itself, the holder of the mortgage, bought the ship in a credit bid.

Key Bank's assertions can only be seen as an attempt to avoid liability on purely technical and insubstantial grounds. Key Bank points to the definition of "proceeds" provided in a few older cases, claiming that proceeds must be money "paid into the registry of the court." *Crabtree v. The S.S. JULIA,* 290 F.2d 478, 481 (5th Cir.1961). Here, because the sale of the ship resulted only in a credit granted to the account of the debtor (and thus less money was owed the bank) and no funds were actually deposited into the court's registry, Key Bank claims that there were no proceeds against which to lien. This argument merely clouds the real issue, which is that, had the buyer been anyone but the bank and former holder of the mortgage, a fund would have been produced from the sale of the ship, and Branda would have had a fund against which to assert his lien. Key Bank cites no authority holding that property sold on a credit bid does not produce "proceeds" against which a lien can be asserted. This Court affirms the district court's conclusion that Branda's lien survived the sale of the Ship.

### IV

The district court justified its decision to hold Key Bank personally liable for Branda's wages under equitable principles, concluding that "Key Bank is not prejudiced by this decision because it had notice of Branda's claim prior to the time of foreclosure." Key Bank claims that converting the *in rem* claim to an *in personam* claim exceeded the equity powers of the court and that the equities involved favor Key Bank, namely, that the Ship Mortgage Act was enacted so that private investors may purchase a ship free and clear of all encumbrances.

■■■ A district court sitting in admiralty has equitable powers to do "substantial justice." *Mosher v. Tate,* 182 F.2d 475, 479 (9th Cir.1950). The cases Branda cites in support of converting an admiralty *in rem* claim into an *in personam* claim all involve claims in which the defendant could have been held personally liable to the claimant. Nonetheless, the district court's decision to hold the bank personally liable can be seen as nothing more than a tracing issue. Branda could have maintained a lien against the SOUTHERN COMFORT, but the ship was sold before he had the chance to make his claim. The proceeds of the sale directly benefitted Key Bank, who also happened to be the purchaser of the ship. Branda now has a claim against these proceeds, and the district court simply held Key Bank responsible as the direct beneficiary of the sale of the ship. Key Bank's concerns about the position of the bona fide purchaser who should receive title free and clear of all liens and encumbrances, although perhaps noteworthy in other cases, do not apply here as Key Bank clearly had notice of Branda's claim before the sale of the ship. The district court considered Key Bank's notice of the claim and justifiably allowed Branda's claim to stand against Key Bank as holder of the proceeds of the sale of the SOUTHERN COMFORT.

### V

This case presents some rather unusual circumstances because of Branda's intervention after the sale of the Ship on a credit bid. Nonetheless, Branda properly asserted a maritime lien against the Ship, and the district court properly allowed Branda to intervene in the foreclosure action to assert his lien. Key Bank was fully aware of the existence of Branda's lien and will suffer no prejudice by being held liable for Branda's wages.

AFFIRMED.